[Civ. No. 684. Third Appellate District.—February 18, 1910.]

## J. L. TACKETT, Respondent, v. HENDERSON BROTHERS COMPANY, a Corporation, et al., Defendants; MARIA CARY SANBORN, BLANCH D. CARY, and F. G. CARY and E. C. CARY, as Copartners, etc., Appellants.

NEGLIGENCE OF ELECTRIC LIGHT COMPANY—SAGGING WIRE LEFT UNINSPECTED—APPEARANCE OF HARMLESS GUY WIRE—ACTION FOR DEATH OF CHILD.—It was actionable negligence for appellants, as an electric light company, to permit a charged wire, having the appearance of a harmless uninsulated guy wire, to sag upon the ground without inspection for two days, as the result of which plaintiff's child was killed by contact therewith, and appellants are responsible to plaintiff for the death so caused.

ID.—CAUSE OF SAGGING IMMATERIAL.—Where the wire was attached by appellants across the street to an iron pipe to which it was attached as a ground wire, it is immaterial to appellants' responsibility that an employee of the corporation defendant, while fixing the stand-pipe, when the electricity was off, cut the wire and left it sagging, believing it to be a harmless guy wire.

ID.—INJURY TO WIRE BY ANOTHER PERSON—EXPIRATION OF REASONABLE TIME TO REPAIR DAMAGE.—The fact that the injury to the wire was caused by another person of whose act appellants were ignorant merely allows them no more than a reasonable time in

which to inspect the wire and repair the injury, and a failure to inspect and remedy the same within such time is negligence.

ID.—DUTY AND RESPONSIBILITY OF APPELLANTS—IGNORANCE OF CONDITION OF WIRE—NEGLIGENCE.—It was the duty of the appellants to make frequent inspections of their electric system, and, upon reason and authority, it must be held that their ignorance of the condition of such charged wire for two days amounts to actionable negligence, with the burden of responsibility in damages for any injury resulting therefrom.

ID.—GROUND OF RESPONSIBILITY—GREATEST CARE REQUIRED IN INTEREST OF HUMAN LIFE.—The ground for the responsibility of appellants is that in the use of electricity, which is dangerous to life, they are required, in the interest of human life, to exercise the greatest degree of care and constant vigilance in inspecting and maintaining their wires in perfect condition.

ID.—ABSENCE OF CONTRIBUTORY NEGLIGENCE OF CHILD—GRASPING OF WIRE APPARENTLY HARMLESS.—A boy eleven years of age, who was killed by taking hold of the sagging wire, cannot be charged with contributory negligence as matter of law, when he had no knowledge of its dangerous character, and there was nothing in its appearance to indicate that it was a live wire. Such a boy is not held to the same degree of caution required of an adult, and the finding of the jury in his favor cannot be disturbed.

ID.—CHILD DECEIVED BY APPEARANCE OF WIRE—APPELLANTS RESPONSIBLE—INEQUITY OF APPELLANTS' POSITION.—Where the actions of the boy clearly showed that he was deceived by the appearance of the wire, for the condition of which appellants were responsible, and such appearance was likely to mislead even experienced electricians, appellants cannot escape responsibility on the ground that the deceased child should not have been deceived. To hold, with appellants, that such child must be charged with contributory negligence, as matter of law, would be to hold that a snare may be laid for the unwary, and that the guilty may take refuge behind the childish credulity of the innocent.

ID.—CORRECT INSTRUCTIONS.—*Held*, that the instructions given by the court, construed together, correctly stated the law applicable to the facts of the case, and to the negligence and responsibility of appellants, and their duty, beyond that of the public, to know the dangerous condition of their wires and to remedy the same.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial. C. W. Norton, Judge.

The facts are stated in the opinion of the court.

Arthur L. Levinsky, for Appellants.

J. A. Plummer, for Respondent.

BURNETT, J.—There is no serious controversy as to the facts herein, which may be stated as follows: The appellants own all the wires, poles and electrical appliances used for distributing electricity in the town of Lodi, San Joaquin county, Cary Brothers being the managers of the plant. The electricity which they distribute is purchased by them from the American River Electric Company. This company has no control nor supervision over the wires or electrical appliances belonging to appellants. Appellants strung the wire in controversy a year before the electrocution of plaintiff's minor child, caused by coming in contact with said wire. This wire was given two wraps around a pole, carried across a sidewalk over an office building, and attached to an iron pipe of a water-tank. It was an ordinary galvanized wire, uninsulated, and having the appearance, as some of the witnesses stated, of being used as a guy wire and not as one charged with electricity. Said wire was used as a "third leg" or ground wire of the system and it thus saved the expense of another wire. From the date of its erection until the death of said child no attention seems to have been paid to this wire. At a time when the current was shut off an employee of Henderson Brothers, thinking that said wire was a guy wire, cut it in order to change the iron stand-pipe to which it was attached. The wire was cut between 1 and 2 o'clock of Friday, August 2d, and remained in that condition until Sunday evening between 6 and 7 o'clock of August 4th. At this time the deceased, who was nearly eleven years old, was walking north on Sacramento street with his mother, he being on the sidewalk and she being in the street. When he saw the wire he called to his mother, saying, "This is the electric wire"; he then grasped hold of it and this resulted in his immediate death.

Appellants were not notified that the wire was to be cut or any change was to be made in it, nor did they have any knowledge that it had been cut until after the death of the said child, Millard M. Tackett. The wire did not fall by

reason of any structural infirmity or defective fastening.    The entire length of the wires owned by appellants in the town of Lodi was about fifteen miles, which could be inspected in one day, and the scene of the catastrophe was only a short distance from the office of the company.    It appears also that other persons saw the wire and attempted to take hold of it, believing from its appearance that it was not charged, the testimony showing that even electrical experts, seeing a wire wrapped as this, would conclude that it was simply a guy wire.

Many questions of law are discussed by appellants, and various reasons are assigned for a reversal of the judgment, but the vital propositions involved are: 1. Were appellants chargeable with negligence? and 2. Was the deceased guilty of contributory negligence in taking hold of the said detached wire?

As to the first, upon special issues submitted, the jury found that the "defendants Cary Brothers, by the exercise of reasonable care and inspection, could have discovered the condition of the fallen wire between about 1 o'clock Friday afternoon and about 6:30 o'clock the following Sunday afternoon," and also that "The wire which was placed in position by the defendants Cary Brothers, at the time it was placed in position, and up to the time when it was cut loose from the iron pipe on the tank was dangerous to any person passing underneath."

In reference to this latter finding it may be observed that the menace from the wire in position lay in the fact, as has already been indicated, that its appearance and adjustment were such as to lead to the belief that it was not charged with electricity.    This finding, however, need not be considered at length, since the general verdict as to negligence follows from the answer to the aforesaid special issue as to the ability of appellants to ascertain the condition of the wire after it was cut and before the accident.

We think it was unquestionably the duty of appellants to make frequent inspection of the system, and upon reason and authority it must be held that their ignorance of the condition of said wire amounts to actionable negligence with the burden imposed of responding in damages for any injury occasioned thereby.    That they omitted a plain and imperious duty in

the premises appears from the testimony of the manager that "So far as I knew, the wire as I strung it across there remained in the same condition it was put up until the day somebody cut one end. I paid no further particular attention to that wire that I know of after it had been put up. I told Mr. Bauer under certain conditions that wire was dangerous. . . . I cannot tell how long it had been prior to the occurrence that I had given the wire any attention." It is apparent, of course, that no attention was paid to it during the interval to which we have referred, as otherwise it would not have been allowed to remain hanging loose. The contention of appellants in this connection is that they are relieved of responsibility because they had no actual knowledge of the condition of the wire. But in view of the character of the agency with which they were dealing and the solicitude of the law for human life, the failure to exercise diligent and proper care to obtain information is equivalent to actual knowledge of the situation, as far as their civil liability is concerned.

The ground for the strict exaction of the law in reference to the obligation of appellants is well set forth in the opinion of the court in *Mitchell* v. *Raleigh Electric Co.*, 129 N. C. 166, [85 Am. St. Rep. 735, 39 S. E. 801], as follows: "The defendant company was engaged in the business of manufacturing, producing, leasing and selling light made from the use of electricity, which is the most dangerous and deadly power recognized as a necessary agency in developing our civilization and promoting our comfort and business affairs. It differs from all other dangerous utilities. Its association is with the most inoffensive and harmless piece of mechanism, if wire can be classified as such, in common use. In adhering to the wire it gives no warning or knowledge of its deadly presence; vision cannot detect it; it is without color, motion or body; latently and without sound it exists, and being odorless, the only means of its discovery lie in the sense of feeling, communicated through the touch, which, as soon as done, becomes its victim. In behalf of human life and the safety of mankind generally, it behooves those who would profit by the use of this subtle and violent element of nature to exercise the greatest degree of care and constant vigilance in inspecting and maintaining the wires in perfect condition." Many cases to the same effect in connection with the fore-

going are cited in *Shawnee Light etc. Co.* v. *Sears,* 21 Okl.
13, [95 Pac. 449], wherein it is held that "An electric light
company, using the public streets of a municipality for its
poles, wires and appliances in conducting its business, is re-
quired to exercise the highest degree of care, and to maintain
in the best possible condition the best appliances known to
the science, to render its business safe and to use that degree
of care, caution and circumspection in keeping with the dan-
gerous character of its business." In the Sears case, *supra,*
the chief complaint of appellant was directed against an in-
struction informing the jury that it was "the duty of de-
fendant to keep its appliances in a safe condition for those
who might be brought in close proximity with them in travel-
ing along the public streets, and if plaintiff, without fault on
her part, was injured as complained of, then she was entitled
to recover damages in the action." In reference to this in-
struction the court said: "At the time instruction No. 3 was
given by the court, plaintiff's evidence had shown that with-
out fault on her part, proceeding on the public highway in a
place where she had a right to be, she came in contact with
the appliances of the defendant company at the edge of the
footwalk; that the appliance was one in a most exposed place,
and where people were liable to come in contact with it, and
one which in the operation of its plant the defendant did not
use for the transmission of its current and in which its cur-
rent would not then have been except for the want of due
care and regard for safety on its part or its servants. Under
these circumstances the instruction was given, and the ques-
tion arises, Was the company liable from a showing of these
facts? We hold that it was, and that this is sustained by a
great weight of authority in this country and in England."
(Citing on page 24 of 21 Okl. [page 453 of 95 Pac.] a long
list of authorities.)

The supreme court of Montana stated the rule in slightly
different phraseology as follows: "The owner or operator of
an electric plant is bound to exercise a reasonable degree of
care in erecting pole lines, selecting appliances, insulating
the wires wherever people have a right to go and are liable
to come in contact with them, and in maintaining a system
of inspection by which any change which has occurred in the
physical conditions surrounding the plant, poles, or lines of

wire, which would tend to create or increase the danger to persons lawfully in pursuit of their business or pleasure, may be reasonably discovered. It would hardly do to say that the defendant can only be required to exercise due diligence after it receives notice of any defect in its appliances or of any change in the physical conditions surrounding them, for this would be placing a premium upon negligent ignorance." (*Bourke* v. *Butte Electric & Power Co.,* 33 Mont. 267, [83 Pac. 473].)

In *Mitchell* v. *Charleston L. & P. Co.,* 45 S. C. 146, [22 S. E. 767], it was held that "Where a company permitted for a day and a half a circuit breaker to be displaced so as to allow a trolley system to come in contact with a telephone wire, it is guilty of negligence irrespective of how the displacement occurred."

In Pennsylvania the rule as to gas companies is stated as follows: "While no absolute standard of duty in dealing with such agencies can be prescribed, it is safe to say, in general terms, that every reasonable precaution suggested by experience and the known dangers of the subject ought to be taken. This would require, in the case of a gas company, not only that its pipes and fittings should be of such material and workmanship, and laid in the ground with such skill and care, as to provide against the escape of gas therefrom when new, but that such system of inspection should be maintained as would insure reasonable promptness in the detection of leaks that might occur from deterioration of the material of the pipes, or from any other cause within the circumspection of men of ordinary skill in business."

Similarly, in *District of Columbia* v. *Woodbury,* 136 U. S. 463, [10 Sup. Ct. 995], it is held as to those having the care of the streets that they are responsible for their condition if they have actual or constructive notice thereof, and that it is their duty to keep themselves informed concerning the same, and "if a street remains in a dangerous condition so long that the authorities could not help, in the exercise of ordinary care and diligence, knowing that fact, and did not know it because they failed to exercise proper diligence, then the law imputes notice to them; in other words, they have notice in contemplation of law, and that is constructive notice."

The same principle is affirmed in the courts of this state. In *Giraudi* v. *Electric Imp. Co.*, 107 Cal. 124, [48 Am. St. Rep. 114, 40 Pac. 109], it is said: "Defendant was using a dangerous force and one not generally understood. It was required to use very great care to prevent injury to person or property. It would have been comparatively inexpensive to raise the wires so high above the roof that those having occasion to go there would not come in contact with them."

In *Davoust* v. *City of Alameda*, 149 Cal. 69, [84 Pac. 760], it is held that "where the death was caused by a live wire negligently allowed by the city to remain upon a beaten path four feet wide over a vacant lot which had been used for many years by residents of the neighborhood in going from their homes to a railroad station, it was sufficient to prove the negligence of the city."

Many other cases are cited by respondent in line with the foregoing which emphasize the great care required of such companies for the protection of life and property, and our attention has been called to none holding that careless ignorance exonerates from liability. Of course, when the injury to the wire is done by another without the knowledge of the owner, the latter would be entitled to a reasonable time to repair the damage, but here we are satisfied that the failure of appellants for such an interval to ascertain the condition of the wire cannot be justified nor excused.

If the deceased had accidentally touched the wire, there could be no difference of opinion among reasonable persons as to the liability of appellants. The problem, however, is somewhat complicated by the fact that the act was voluntary on his part, and hence the claim is made of contributory negligence. This is rendered more plausible by the consideration that he was an unusually bright boy, but after all, the question is, Was his conduct under the circumstances indicative of the want of that care which is to be expected and which the law demands of a boy of his age, seeing what he saw and knowing what he knew?

In the solution of the question we cannot lay out of view the fact that he was a mere child, that he did not know of the dangerous character of the wire, and that there was nothing in its appearance to indicate that it was a live wire.

That a person of this boy's age is not held to the same degree of caution as is required of an adult will not be challenged by anyone, and it is abundantly supported by the cases. That he did not know the wire was dangerous is shown by his conduct in grasping it, *res ipsa loquitur.* It is not at all probable that the boy would have seized the wire if he had any knowledge or intimation of the hazard involved. His actions show that he was deceived by the appearance of the wire, and since appellants were responsible for that condition likely to mislead even experienced electricians, they cannot escape liability upon the ground that the deceased should not have been deceived. The question is at least open to frank and reasonable discussion and, as we view it, the conclusion that the lad was not chargeable with contributory negligence is not unreasonable. We therefore feel bound by the finding of the jury adverse to the contention of appellants.

As to this point we refer also to some of the decisions expressing views in line with the foregoing.

In *Haynes* v. *Raleigh Gas Co.,* 114 N. C. 203, [41 Am. St. Rep. 786, 19 S. E. 344], it is said: "A child of ten years of age is not chargeable with contributory negligence because he took hold of a wire in the street charged with a deadly current of electricity, if there was nothing from which even an adult could have inferred that the wire was carrying any current of electricity whatever." Therein is announced the rule that "a child is held to such care and prudence as is usual among children of his age and capacity." In the course of the discussion we find this language: "We should be very loath to declare an adult guilty of negligence for grasping a wire such as this one under circumstances such as the defendant contends surrounded the deceased. We certainly cannot declare that this boy, whose conduct must be judged with due regard for his boyish nature and habits, negligently caused his own death."

In *Temple* v. *McComb City Electric Light & Power Co.,* 89 Miss. 1, [119 Am. St. Rep. 698, 42 South. 874], it is held that "If a boy climbs into a tree through the branches of which an uninsulated electric wire has been placed by an electric light company, and he is injured by coming in contact with such wire, the company is liable therefor, when the

tree is such as any small boy would be attracted to and use
in his play.''

In the Giraudi case, *supra,* the rule is clearly stated by our
supreme court as follows: ''The mere fact that a dangerous
agency is used raises no presumption that the public know
enough of its nature to avoid the danger which may arise
from its use; and the public—aside from the consumers using
the commodity—owe no duty to those introducing it; but it is
the duty of those making a profit from the use of a dangerous
element, such as electricity, to use the utmost care to prevent
injury to any class of people, and they must protect those
possessing less than ordinary knowledge of the character of
the commodity. . . . Where a person injured from contact
with electric wires was ignorant of the danger that might
result from the contact, a less degree of care is demanded of
him than would have been required if he had been informed
of the danger; and what constitutes reasonable care must be
judged by the circumstances of the case of which the jury
are the judges.'' (See, also, *Griffin* v. *United Electric Light
Co.,* 164 Mass. 492, [49 Am. St. Rep. 477, 41 N. E. 675].)

Without multiplying authorities, we conclude that it would
be harsh and brutal to hold that beyond reasonable contro-
versy the deceased was guilty of contributory negligence, and
that it was against the mandate of the law to submit the de-
termination of this question to the judgment of the jury.
To hold with appellants would be to indorse the doctrine that
a snare may be laid for the unwary and that the guilty may
take refuge behind the childish credulity of the innocent.

The cases cited by appellants in opposition to these views
do not reach the point. We notice specifically only two Cali-
fornia decisions: *Studer* v. *Southern Pacific Co.,* 121 Cal. 400,
[66 Am. St. Rep. 39, 53 Pac. 942], and *George* v. *Los An-
geles Ry. Co.,* 126 Cal. 358, [77 Am. St. Rep. 184, 58 Pac.
819]. In the former it was held that ''a child between
twelve and thirteen years old who attempts to cross between
the cars of a freight train standing at a crossing, and while
in the act of climbing over the couplings, is killed by the
sudden and unannounced starting of the train, is chargeable
with contributory negligence as matter of law,'' and further-
more that ''Children, as well as adults, must use the discre-
tion which persons of their years ordinarily have, and can-

not be permitted with impunity to indulge in conduct which they know, or ought to know, to be careless.''

The danger there was obvious to any child of that age of ordinary intelligence, and it was held that the risk was so great and so manifest that the deceased had no right to assume it.

In the George case the question of contributory negligence was submitted to the jury, who found for the defendant, and the supreme court held it was proper to leave this question to the jury ''free from any presumption as to plaintiff's incapacity.''

In those cases the danger was open to the observation, and could be comprehended by children over ten years old of average intelligence. Here the danger was hidden and concealed, and by reason of the negligence of appellants would not be suspected even by adults, and therefore an altogether different situation is presented.

The court's instructions, as we view them, stated the law correctly. There seems to be no valid objection to instruction No. 3, charging that ''The owners of property are liable for any acts of negligence upon the part of persons who may be managing such property for them, and if you believe from a preponderance of the evidence that the Cary Brothers were guilty of the negligence charged in the complaint, and that their negligence was the proximate cause of the death of Millard Tackett, and that at the time of the death of said Tackett the Cary Brothers were acting as managers of the electric system at Lodi for the defendants Blanch D. Cary and Maria Cary Sanborn, then your verdict should be not only against the Cary Brothers, but also against the said Blanch D. Cary and Maria Cary Sanborn.'' The instruction is hypothetical, does not assume any fact as proven, embodies a correct principle of law and is based upon the evidence. The only criticism that could be directed against it is that it does not specifically require that the acts of the managers, in order to bind the principal, must be within the scope of their employment, but that element is necessarily implied, and the jury were explicitly so directed in another instruction.

An instruction was also given that ''the terms 'due care' and 'ordinary diligence' as used in the law of negligence are relative terms, and mean a degree of care commensurate

with the danger involved. . . . Wires charged with an electric current may be harmless, or they may be in the highest degree dangerous. The difference in this respect may not be apparent to ordinary observation, and the public, therefore, while presumed to know that danger may be present, are not bound to know its degree in any particular case. The company or persons, however, using such a dangerous agent are bound to know the extent of the danger, and to use the highest degree of care practicable to avoid injury to anyone who may be lawfully in proximity to its wires and liable to come accidentally in contact therewith. . . . Where one places or maintains a wire charged with a highly dangerous current or a wire likely to become charged with a highly dangerous current over a public street, the law requires that he must use the highest or utmost degree of care in the construction, maintenance and operation of said wire, and he must use the best materials and most approved methods of construction to prevent injury to anyone who may lawfully or accidentally come in contact therewith, and also use due care and circumspection over such wire to prevent it from sagging down within reach of pedestrians lawfully using a public street or sidewalk space adjacent thereto. Any failure to observe these requirements renders the person so failing liable for all damages that may thereby be caused to others who, without fault of their own, come in contact with such wire or wires." The objection to this instruction made by appellants is that "the jury were instructed that while the public may be presumed to know the danger, they are not bound to know its degree, and furthermore, that these appellants were compelled to exercise due care and circumspection to prevent the wire from sagging down, which was not a fact in the case because the wire did not sag down, and therefore these appellants had performed their duty. It sagged down by reason of having been cut without notice to these appellants, and it was an instruction not based upon the evidence, and, like the last instruction, permitted the jury to romance, guess and surmise."

The proposition, however, as to the degree of knowledge has been affirmed in many decisions, among them the case of *Fitzgerald* v. *Edison Electric Illuminating Co.*, 200 Pa. 540, [86 Am. St. Rep. 732, 50 Atl. 161], wherein it is said: "A person or company using wires charged with an electric cur-

rent is bound, while the public is not, not only to know the extent of the danger arising from them, but to use the very highest degree of care practicable to avoid injury, etc. The duty is not only to make such wires safe by proper insulation, but also to keep them so by constant oversight and repair." It is also directly upheld in this state by the Giraudi case, *supra.* There was evidence also—in fact, it is undisputed— that the wire was "sagging" or hanging down over the sidewalk for two days. It is true that, as before seen, it was cut by another, but appellants' negligence consisted in allowing it to remain so. The objections of appellants are thus seen to be without merit.

Many objections were made to the admissibility of evidence. We do not feel called upon to review them in detail. We think no prejudicial error was committed. Some of the questions were proper on behalf of the defendants other than appellants, and if the answers thereto should not have been considered as against the latter, it is sufficient to say that there was no request to so limit them, and there were other questions where an objection was overruled that were not answered at all.

We find no material conflict in the special findings of the jury, nor do we think they are opposed to the general verdict. The case seems to have been fairly tried, the verdict is a very moderate one, and we think the judgment and the order denying the motion for a new trial should be affirmed, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 15, 1910.