[Civ. No. 730.   Third Appellate District.—October 31, 1910.]

## PAULINE F. FOLEY et al., Appellants, v. NORTHERN CALIFORNIA POWER COMPANY, a Corporation, Respondent.

NEGLIGENCE OF ELECTRIC POWER COMPANY—LINES BROKEN BY SNOW-STORM—INSUFFICIENT INSPECTION—ACTION FOR DEATH.—Where the lines of an electric power company in a municipality were caused by a heavy snowstorm to sag and break, and the power was turned off during an inspection of the lines which was partial and incomplete, and then the power was turned on again, so as to charge in full a broken line which it failed to inspect or repair within a reasonable time, and thereby caused the death by electrocution of one who was moving the broken wire out of the way, believing it to be harmless, such failure fully to inspect its lines throughout the municipality, and to discover and repair the broken wire, was actionable negligence.

14 Cal. App.—26

ID.—COMPANY PUT UPON NOTICE BY STORM—UNREASONABLE DELAY.— The company was plainly put upon notice by reason of the storm, and in view of the agency with which it was dealing, and the importance of the safety of citizens, the company could not be held blameless for its failure to ascertain and avert the obvious peril. While a reasonable time would be allowed to make an investigation, yet the proximity of the scene of the accident and its accessibility to the company's office rendered the delay of two days after the storm unnecessary and unreasonable.

ID.—DUTY OF OPERATOR OF ELECTRIC PLANT—SYSTEM OF INSPECTION.— The owner or operator of an electric plant is bound to exercise reasonable care in maintaining a system of inspection by which any change in the physical condition of the plant which could tend to increase the danger to persons lawfully in pursuit of their business or pleasure may be reasonably discovered.

ID.—CARE TO BE IN PROPORTION TO DANGER.—The care which the law exacts from any person, firm or corporation engaged in operating an instrumentality is always in proportion to the degree of danger reasonably to be apprehended from the use of the means employed.

ID.—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.—In this state the burden of proving contributory negligence is cast upon the defendant.

ID.—CONTRIBUTORY NEGLIGENCE A QUESTION OF FACT FOR JURY.—Contributory negligence is a question of fact for the jury, and while there is evidence from which the jury might be warranted in finding against the existence of contributory negligence, yet it cannot be said that the freedom of the deceased from contributory negligence is so clear that an adverse finding is entirely unsupported.

ID.—AIMLESS OR NEEDLESS SEIZING OF WIRE.—Where there is evidence that the deceased picked up the wire with both hands, and the inference is not unreasonable that there was no occasion for him to take hold of the wire either for his own safety or that of others, even if he had reason to believe that the wire was harmless, yet if he aimlessly or wantonly or unnecessarily seized it and thereby received a shock, it would still be competent for a jury to find that his unnecessary or reckless act was inexcusable, and to hold him legally responsible for the consequences.

ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—WITNESS PRESENT AT TRIAL.—The court did not err in refusing to grant a new trial for newly discovered evidence, where it appears that the witness was on the stand during the trial, and the evidence might have been produced with reasonable diligence at the trial.

ID.—PLEADING—GENERAL CHARGE OF NEGLIGENCE—SPECIFICATION—INSTRUCTION EXCLUDING ISSUE AS TO NEGLIGENT CONSTRUCTION.— Where the complaint alleged negligence generally, with specifications as to the dangerous condition of the wire, and defendant's negli-

gence in failing to discover and remove it, or to turn off the current of electricity therefrom, and in permitting it to remain on the ground heavily charged with electricity for an unreasonable time, and that defendant's death resulted from such negligence, without specifying anything as to the negligent construction of cross-bars, an instruction that the complaint tendered no issue as to such negligent construction was properly given.

Id.—Rule as to Allegation and Proof—Evidence of Condition of Cross-bar as Part of Res Gestae.—The instruction given was in line with the familiar rule requiring a correspondence between allegation and proof, and·it was not ground for reversal, notwithstanding evidence as to a cross-bar received without objection, as part of the *res gestae,* as to the appearance of the cross-bar attached to the pole nearest to the deceased. Such evidence does not constitute or show any acquiescence in the theory that the complaint charged negligence as to the construction of the cross-bars nor conflict with the rule that the recovery must be confined to the allegations made and the proof thereof.

Id.—Requested Instruction as to Negligence Based on Snowstorm—Exclusion of Inadequacy of Power Line—Abstract Error Without Prejudice.—A requested instruction as to negligence of the defendant based on injury to its wire from a snowstorm, which is abstractly erroneous by its indication that negligence consisting of inadequacy, insecurity and insufficiency in the installation and maintenance of its power line was immaterial, was not prejudicially erroneous, in view of other instructions given, and also in view of the fact there is no evidence of any imperfection of any kind in the construction or maintenance of the power line, but, on the contrary, the evidence shows without conflict that they were not faulty in any respect.

Id.—Prejudicial Instruction—Presumption of Knowledge of Dangers of Electricity—Invasion of Province of Jury.—An instruction that "a man of ordinary prudence and understanding, who has lived in a city, neighborhood, or community where electricity is conveyed by means of power and pole lines for purposes of heat, light and power, and where electric power transmission lines are installed and maintained, and who has been around electrical power lines, transmission lines, service lines, machinery and appliances, is presumed to know the powers, dangers and potentialities of electricity and electric power," is prejudicially erroneous, as invading the province of the jury, and ignoring the question of fact whether deceased had reason to believe that the wire was not charged with electricity.

Id.—Presumption in Opposition to Fact—Province of Court.—The presumption stated in the instruction is in opposition to the fact. No ordinary man is presumed to know the "powers and potentialities of electricity." Nor is it one of the unquestioned data of gen-

eral knowledge that the ordinary man who lives in a neighborhood where there are electric plants, or who has been around the machinery and appliances, can be presumed to know the "dangers and potentialities of electricity"; nor is a court so permitted to declare to a jury.

ID.—DETERMINATION OF KNOWLEDGE OF DANGER BY DECEASED—QUESTION FOR JURY.—The determination of the knowledge of danger on the part of the deceased should have been left to the jury without any direction unfavorable to plaintiffs.

ID.—REQUEST BY PLAINTIFFS—ABSENCE OF NEGLIGENCE OF DECEASED—PROPER TEST BELIEF OF ORDINARILY PRUDENT MAN—MODIFICATIONS—SUSPICION.—A requested instruction by plaintiff that if the jury find that deceased, "when going to or coming from his work, found a wire in his way, and that he did not believe it was carrying a current of electricity, and that an ordinarily prudent man in his situation would not have believed that said wire was carrying a current of electricity, then if you find that he placed his hands on said wire in an endeavor to get it out of his way he was not guilty of negligence," was in proper form, and a modification introducing an element of suspicion might well have been omitted. The proper test is whether an ordinarily prudent man, under the same circumstances, would have believed there was danger.

APPEAL from an order of the Superior Court of Tehama County, denying a new trial. John F. Ellison, Judge.

The facts are stated in the opinion of the court.

W. P. Johnson, Charles L. Donohoe, and Frank Freeman, for Appellants.

Reid & Dozier, for Respondent.

THE COURT.—The following statement of the facts, substantially in the language of appellants, is sufficiently full and accurate for an intelligent application of the questions of law involved: The action was brought by Pauline F. Foley on her own account, and as guardian *ad litem* of her two minor children, against the defendant for damages on account of negligence in causing the death of James M. Foley, husband of the said Pauline Foley and father of said minor children. The case was tried before a jury and the verdict was for defendant. The appeal is from the order denying the motion for a new trial.

The defendant was and is a corporation engaged in the business of generating, selling and distributing electricity. On the 18th of January, 1907, and prior thereto, it maintained wires over and along the west side of Fourth street, between Park avenue and Douglas street, in the Park addition to the town of Red Bluff, and used said wires for the purpose of producing light and power. There were two unusually heavy snowfalls in that vicinity in January, 1907, the first on the 7th and the second on the 16th of the month. On the morning of the 17th, Charles Hughes, superintendent of defendant corporation for the Red Bluff division, came to town and discovered a number of wires down, all but one being telephone wires. Knowing they might come in contact with power lines, he cut the telephone wires which were hanging down, free from the poles, and caused the electricity to be turned off from the town. He then sent three employees to patrol his lines. They returned in a short time, reporting that they had found a few one hundred and ten volt lines down and a number of them badly sagged, but not dangerous. Mr. Hughes then turned the current back on the town and two thousand volts of electricity were carried into the transformer attached to the southernmost pole on Park avenue. Later he found that the employee who had been sent to patrol the lines, including Park avenue, had patroled them no farther than the pumping plant, three blocks north of the Park avenue line. The Sanitary Fruit Company had a packing-house and cutting shed and dryer on block N of said Park addition. The season had closed, but James M. Foley was employed to do odd jobs about this property. On Friday afternoon, January 18th, between 12 and 1 o'clock, he left his home to go to work for said company. He was last seen alive between 12 and 2 o'clock of said afternoon within two blocks of and going toward said property. His body was found early in the afternoon of Saturday, the 19th, under a trestle near the said south pole on Fourth street. The wire from this pole was detached and lying coiled up at one end about six feet from his body. It was an uninsulated copper wire about one-tenth of an inch in diameter. His body lay in a little passageway about four or four and a half feet high, used by the workmen in going to and from the dryer. His hands were partially closed. The fingers of the

glove he wore and the fingers of the hands were burned. The body lay perfectly rigid. There was a hole scooped out by his heels as he fell. Dr. Fife testified: "I judge the moment he touched the wire he received this tremendous shock and the body became rigid and he pitched forward." After Foley was killed it was ascertained that the two thousand current wire had become detached from the said southerly pole. The cross-arm was split and hanging down and the wire was broken at the insulator. There is nothing to account for the breaking of the wire except the heavy snowstorm. As the deceased was alone at the time of the fatal affair, the immediate surrounding circumstances are involved in some degree of obscurity. It is, however, reasonably certain that he took hold of the wire—probably to remove it from the path—and he was instantly electrocuted.

As usual in such cases, two main questions are presented, one relating to the negligence of defendant and the other to the contributory negligence of the deceased. As to the first, it is clear that defendant's manager acted prudently in turning off the current when on the morning of January 17th he ascertained the effects of the storm. But the mistake was made in turning on the current without patroling the line on Fourth street south of Park avenue. It is manifest that if that portion of the line had been explored the break would have been discovered and the line restored before the current was turned on again. The question is thus presented whether this failure to inspect the line involved herein is imputable to defendant as actionable negligence. In regard to this there can hardly be any difference of opinion. The company was plainly put upon notice by reason of the storm, and, in view of the nature of the agency with which it was dealing and the importance of the safety of the citizens, the company could not be held blameless for its failure to ascertain and avert the obvious peril. A reasonable time would, of course, be allowed in which to make an investigation, but the proximity of the scene of the accident and its accessibility to the company's office render the conclusion irresistible that the delay was unnecessary and unreasonable.

The owner or operator of an electric plant is bound to exercise reasonable care in maintaining a system of inspection by which any change in the physical condition of any part

of the plant which would tend to increase the danger to persons lawfully in the pursuit of their business or pleasure may be reasonably discovered. (*Bourke* v. *Butte Electric & Power Co.*, 33 Mont. 267, [83 Pac. 470].)

The care which the law exacts from any person, firm or corporation engaged, in operating an instrumentality is always in proportion to the degree of danger reasonably to be apprehended from the use of the means employed. (*Carroll* v. *Grande Ronde Electric Co.*, 47 Or. 424, [84 Pac. 391].) In the latter case it was held that where defendant permitted a wire charged with a high degree of voltage to remain for nearly twenty hours fastened to a picket fence beside a public highway in such condition that any living creature coming in contact with the wire must necessarily suffer death, defendant was *prima facie* guilty of negligence. A similar view is announced and other authorities cited in the case of *Tackett* v. *Henderson Bros.*, 12 Cal. App. 658, [108 Pac. 151]. We have, therefore, no hesitation in declaring that on the question of the negligence of defendant the conclusion should be in favor of plaintiffs.

As to whether the conduct of the deceased was such as to preclude recovery there is more room for candid difference of opinion. As we have already observed, no one saw the accident which resulted in Foley's death. Appellants argue that to assume that he was guilty of contributory negligence would be to indulge in mere surmise, a mere guess, when all the facts proven are consistent with an entire absence of negligence on his part and in truth they affirmatively show that he is not chargeable with negligence. In this state the rule is that the burden of proving contributory negligence is cast upon the defendant and it is insisted that no such evidence is to be found in the record. Assuming that the deceased picked up the wire, we must conclude—so it is contended—that he did not believe and had no reason to believe that the wire carried electricity. This follows from the presumption that he had such a regard for his life as the ordinary man has. (*Texas P. R. Co.* v. *Gentry*, 163 U. S. 353, [16 Sup. Ct. Rep. 1104]; *Baltimore & P. R. Co.* v. *Landrigan*, 191 U. S. 460, [24 Sup. Ct. Rep. 137].) As to the reason for his believing that the wire carried no electricity, these circumstances are pointed out: The south pole, near which Foley was

killed, was the end of the Northern California Power Company's line. Foley had been working the preceding season for the Sanitary Fruit Company and the electricity had been shut off, so that it did not enter the transformer in the building. The motor of the company was taken away between the first and the fifteenth days of November, 1906, and after this there was no electricity used by the said company and probably not for a month previous. There was no person to be served with electricity beyond the Sanitary Fruit Company's plant. The Madison place, just beyond and adjoining block N had used electricity from this line. But no electricity had been used on the Madison place for months. As the deceased had been working about the company's property he must have been familiar with these facts. Indeed, the local manager of the company testified that Foley worked "at such times as he saw fit. The days were short out in the shed and the sheds were dark when he was working on block N. He couldn't work long hours on account of the absence of light." Seeing the wire detached from the said south pole he would, therefore, naturally conclude that it was not charged with electricity, and his efforts to remove it cannot be said to manifest any recklessness or want of due caution on his part. It is urged also that he was an unskilled laborer and the same degree of care could not properly be exacted of him as of one familiar with the dangerous character of electricity. It is true that there is some evidence that he had occasionally turned on and off the motor. But this was in obedience to the direction of the foreman, and it was a very simple operation, as the testimony of the foreman shows: "From time to time Mr. Foley turned on the motor under my instructions. Sometimes I would call to him if I was close enough. At other times I would give him a motion of the hand. He turned on the motor just by moving a little lever. All that was necessary to stop the motor was to move the switch." But granting, as stated in *Shade* v. *Bay Counties Power Co.*, 152 Cal. 12, [92 Pac. 63], that deceased "was not a backwoodsman who had never heard of electric plants and the danger which lurks in live wires—if, indeed, such a person could be found in California," and, assuming that he realized the probable consequences of taking hold of such a wire, still it is urged that he had a right to believe, under

the circumstances, that the wire was not a live one and therefore he was not chargeable with negligence. The contention is quite plausible and the jury might have found accordingly, but we are not prepared to say that the freedom of deceased from negligence is so clear that an adverse finding is entirely unsupported. There is evidence that he picked up the wire with both hands, and the inference from all the circumstances detailed is not unreasonable that there was no occasion for him to take hold of the wire either for the safety of himself or of others. There are two considerations to be weighed in determining whether he was guilty of contributory negligence. The first relates to the rationality of his belief as to the wire being charged and the other to the quality of his act in taking hold of the wire at all. Even if an individual had reason to believe that a wire was harmless, yet if he aimlessly or wantonly or needlessly seized it and thereby received a shock, it would still be competent for a jury to find that his unnecessary and reckless act was inexcusable and to hold him legally responsible for the consequences. Appellants, as we view it, have not given due consideration to this phase of the question.

We cannot hold that the trial court erred in declining to grant a new trial on account of the newly discovered evidence. This was set forth in an affidavit by one John Berg and consisted of the declaration that he saw the detached wire on the day before Foley's death and that he did not think "it was more than one foot to the east of that part of the tramway where Foley's body was found. There was a bend in the wire and it stood up from the ground in front of said passage at least two feet." But this witness was on the stand during the trial and the case was brought clearly within the rule that "where newly discovered evidence might have been produced with reasonable diligence a new trial will not be granted." (*People* v. *Urquidas,* 96 Cal. 239, [31 Pac. 52].) There are other reasons why the foregoing affidavit should not have the effect contended for by appellant but they need not be considered.

Complaint is made of the following instruction given by the court on the request of defendant: "I charge you that there is no allegation in the amended complaint of plaintiffs in this action charging the defendant with negligent con-

struction or maintenance of any of its cross-arms, by which it maintained any wires at the point where the deceased, James W. Foley, met his death, and this being so, there is no issue before you as to the proper construction or maintenance of any cross-arms."

It is true that plaintiff made a general charge of negligence on the part of defendant and followed this by particular specifications, among which no reference is made to the cross-arms. The instances of negligence are pointed out as follows: "That said wires were not insulated and were so heavily charged with electricity as to endanger the life of any person who should come in contact with them. . . . That the said wire was of insufficient size and strength for the purpose for which it was used by the defendant. That the defendant negligently failed to remove the said wire from the ground to which it had fallen and negligently failed to turn off the current of electricity with which said wire was charged, and negligently and wrongfully permitted the said wire heavily charged with electricity as aforesaid to remain upon the ground for an unreasonable time after the same had fallen from the pole to which it had been attached." It is further alleged that the death of Foley "was caused by the negligent acts of defendant as aforesaid." The rule undoubtedly is as stated in *Stevenson* v. *Southern Pacific Co.,* 102 Cal. 148, [34 Pac. 620]: "As a result of the application of these principles to code pleading in cases of negligence and to others of kindred character, it is held in this state, and in nearly all of the United States, that it is sufficient to allege the negligence in general terms, specifying, however, the particular act alleged to have been negligently done." The particular acts were specified here and upon these plaintiffs were compelled to rely. The instruction was in line with the familiar principle requiring a correspondence between the allegations and the proof, and it does not furnish ground for reversal. It is true that some evidence as to the cross-bars was received without objection from defendant, but it related particularly to the appearance of the wire attached to the pole nearest the body of the deceased and constituted a part of the *res gestae.* It cannot be said that defendant's failure to object to the recital of the surrounding circumstances must be held as an acquiescence in the theory

that the complaint charged negligence in the construction and maintenance of the said cross-bars.

Instruction No. 5, requested by the defendant and given by the court, is in the following language: "Even though the installation and maintenance of the said power line in question were inadequate, insecure and insufficient, still, if the wire which caused the death of James M. Foley, if his death was caused by the coming in contact with such wire, became detached or broken by reason of a storm or snowstorm of unusual or unexpected force or severity, still the defendant could not be held liable for negligence, unless it allowed and permitted said wire to remain upon the ground for an unreasonable length of time, or failed to turn off the current of electricity after the discovery of the fact that the wire had become detached and had fallen to the ground." The contention of appellants is that this instruction necessarily implies that negligence in the construction and maintenance of the plant is entirely immaterial, although the jury may have believed that a plant properly constructed would have successfully resisted the storm and remained intact. As a proposition of law this would be manifestly incorrect, as a negligent construction or maintenance of the wire, if it contributed to the accident, would impose liability upon the defendant. It is equally true that there must be some causal connection between the injury and the faulty construction or maintenance. If the storm was so violent that it would have broken the wire regardless of its condition, then the storm could be said to be the sole cause of the breaking of the wire, and, if the jury so believed, it would be immaterial if they also found that there was fault in the construction and maintenance. This is really what was intended by the instruction, and while not very happily expressed and subject to the criticism of uncertainty, the jury must have so understood it in view of the other instructions supplementary to and qualifying it. But, if abstractly considered, it should be held erroneous, plaintiffs cannot explain, for the reason that there is no evidence of any imperfection in the construction or maintenance of said wire. The evidence shows without conflict that the installation and maintenance of the system were not faulty in any respect and the court might have so instructed the jury without prejudice to plaintiffs.

Indeed, the only theory upon which a verdict for plaintiffs could be sustained appertains to defendant's negligence in turning on the electric current in the wire in question and allowing it to remain for such a length of time in its exposed and dangerous position.

Instruction 17 presents a more serious problem. Therein the jury were instructed that "A man of ordinary prudence and understanding, who has lived in a city, neighborhood or community where electricity is conveyed by means of power and pole lines for purposes of heat, light and power and where electric power transmission lines are installed and maintained, and who has been around electrical power lines, transmission lines, service lines, machinery and appliances, is presumed to know the powers, dangers and potentialities of electricity and electric power." If we are to indulge such a presumption, it must be in opposition to what we know to be a fact. Neither the ordinary nor, probably, the extraordinary man knows the "powers and potentialities of electricity." But the instruction as to this feature is not so important as the direction in reference to the dangers of electricity, since the latter is a vital element in the determination of the question of the "contributory negligence" of the deceased. In the light of the undisputed facts the instruction of the court would be understood by the jury as a declaration that Foley must be presumed to have known "the powers, dangers and potentialities of electricity and electric power." From this the inference would reasonably follow that he must have known that if he came in contact with a live wire of the voltage in question, death would result. Is this not an invasion of the province of the jury? Is it a matter of such general knowledge that the ordinary man who lives in a neighborhood where electric plants are operated and who has been around the machinery and appliances—however infrequently and whatever his business there—may be declared as a matter of fact to be acquainted with the "dangers and potentialities" of electricity? This does not seem to be one of the unquestioned data of general observation and knowledge that a court is permitted to declare to a jury. Probably the vast majority of such men do understand and appreciate the danger, but under our system of procedure, the plaintiffs had a right to have the jury deter-

mine whether the deceased knew the danger of the electric current. As far as Foley's actual knowledge of electricity is concerned, the record is meager. · There is nothing to show that he was ever employed by an electric light company, and the only connection of his work with the current was in moving a lever one way to turn the electricity on and the other way to turn it off. Nevertheless, the jury were virtually instructed that they must find that he knew the danger of coming in contact with the current. In *Giraudi* v. *Electric Imp. Co.*, 107 Cal. 120, [48 Am. St. Rep. 114, 40 Pac. 108], it is held that: "The mere fact that a dangerous agency is used raises no presumption that the public know enough of its nature to avoid the danger which may arise from its use." It is true, as suggested by respondent, that, since said decision was rendered, we have made great progress in the use and knowledge of electricity, and the instruction condemned therein is more objectionable than the one before us, but after all, the evidence does not show that Foley had any greater knowledge of electricity than the general public. Again, it is not improbable that the jury made a wrong and prejudicial application of the instruction to the act of the deceased in taking hold of the wire, ignoring the consideration of whether he had reason to believe that the wire was not charged with electricity. It is easy to see how, in view of the peculiar facts, the jury may have concluded that the court intended that the presumption of knowledge of the danger would accompany this act of the deceased. At any rate, we think the determination of the knowledge of the danger on the part of the deceased should have been left to the jury without any direction from the court unfavorable to plaintiffs.

The plaintiffs requested this instruction: "If you find that James M. Foley, when going to or coming from his work, found a wire in his way, and that he did not believe said wire was carrying a current of electricity, and that an ordinarily prudent man in his situation at the time would not have believed that said wire was carrying a current of electricity, then if you find that he placed his hands on said wire, in an endeavor to get it out of his way, he was not guilty of negligence." The court modified the proposed instruction by adding after "believed" the following words:

"Or suspected, and would have had no reason to believe or suspect." The contention is that an ordinarily prudent man might have had some suspicion that the wire was charged and yet not be guilty of negligence if he ignored the suspicion and took hold of the wire. The test that seems to be generally recognized is whether an ordinarily prudent man, under the same circumstances, would have *believed* there was danger. It is probable that the jury would not be misled by the introduction of the additional element of *suspicion,* but we think the modification might well have been omitted. As a matter of fact, instruction No. 21, as given by the court is in exact harmony with the proposed instruction No. 20 and we think states the rule correctly.

We have examined the other assignments of error, but find nothing therein demanding specific notice. We think a new trial should be granted and the order denying the motion is therefore reversed.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 27, 1910.