[Civ. No. 3839. Third Appellate District.—December 9, 1929.]

LEROY ROBERTS, as Administrator, etc., Respondent, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation) et al., Appellants.

J. C. Wood, Jerome D. Peters, Thomas J. Straub and George F. Jones for Appellants.

J. Oscar Goldstein for Respondent.

THOMPSON (R. L.), J.—Separate appeals were taken by the respective defendants from a judgment for damages which was entered against them jointly upon the rendering of a verdict for $12,500 for the death of plaintiff's intestate, who was killed by coming in contact with a high-power electric wire which was pulled down by the falling of a tree.

The defendant City of Chico owned an extensive tract of land which was used as a public park and was called Bidwell Park. In this park a golf course and two swimming pools were maintained. March 11, 1925, the city executed a written agreement with the defendant Pacific Gas and Electric Company, by the terms of which the Electric Company agreed to and did construct in and upon said park an electric line of wires and poles covering a distance of five or six miles, to be used for lighting purposes. The contract provided in part: " . . . the Company agrees forthwith . . . to prosecute to completion the work of constructing for the applicant (City of Chico) . . . a pole and wire electric line of the character and along the route as specified and delineated upon the sketch attached hereto and made a part hereof. Said line, upon the completion of the

construction thereof, *shall become the sole property of the applicant,* but all transformers, switches, and meters furnished by the company for use in connection with said line shall at all times be and remain the sole property of the company. . . . '' This system of electric poles and wires extended on and across the city park property for a distance of about five miles to a point on the Big Chico Creek called Five Mile dam, except that for a distance of about 2,300 feet it crossed the property line and extended along the border of an adjoining public roadway. This electric line extended beyond Five Mile dam a distance of about half a mile to the club-house which was maintained by a golf club in Bidwell Park. The Electric Company installed and maintained transformers at the club-house and supplied it with light. This golf club was financed by means of membership and patronage fees. The defendant Electric Company supplied all the electric light and power used in Bidwell Park. The wires carried 2,300 volts of electricity. The Electric Company collected for this service regularly from the golf club as a separate customer. The City of Chico had no device or means of controlling the electricity which passed over the wires throughout the park. This transmitting of electric energy over the system was regulated and controlled solely by the defendant Pacific Gas and Electric Company.

The record contains no evidence showing that either the City of Chico or the Pacific Gas and Electric Company patrolled, inspected or repaired the electric line after its completion and prior to the occurrence of the accident. Ten feet from the edge of the park property a large sycamore tree eighteen inches in diameter was growing. Ten or fifteen feet distant from this tree the electric wires extended along the border of the public roadway. About the middle of September, 1927, this tree fell, dragging the wires down to about three feet from the ground, where the tree lay across the wires for a period of two and a half months partially obstructing the roadway. The wires were concealed in the branches and foliage of the tree, but were not broken and continued to carry the load of 2,300 volts of electricity. On December 3d the plaintiff's intestate, in company with one Dunnigan, took an automobile and trailer and drove along this road in search of firewood. A short distance

from the place where this fallen tree lay protruding into the roadway one of the tires of the machine received a puncture. While Dunnigan was repairing the puncture, Mr. Roberts took an ax and was proceeding to cut the branches of this tree for firewood, when he came in contact with the live electric wires and received injuries from which he subsequently died. Regarding the purpose of cutting the limbs of this tree, Mr. Dunnigan testified: "Q. Do you know why he went to the tree? A. Well to trim the tree. Q. What do you mean by 'trimming the tree'? A. Well, to trim up the top of it for wood. Q. For wood? A. Yes. Q. That was his purpose in going there? A. Yes."

Upon proceedings duly had the plaintiff was appointed and qualified as administrator of the estate of said deceased, and subsequently recovered a judgment against both the City of Chico and the Pacific Gas and Electric Company, as joint tort-feasors. From this judgment separate appeals were perfected.

The appellant City of Chico contends that it is relieved of responsibility for negligence in this case by the provisions of the Statutes of California of 1923, page 675, subdivision 2, for the reason that it was not shown that the city or its agents had knowledge of the dangerous condition of the electric wires. It does, however, appear without contradiction that a large sycamore tree which was growing upon the park premises fell some time in September, 1927, across the property line, pulling down the wires in its fall, and that they lay in this conspicuous condition, partially obstructing the roadway for about two and a half months.

It is true that the line of electric poles and wires extended along the margin of the public roadway for a distance of 2,300 feet at the place where the accident occurred. It may, nevertheless, have been the duty of the city to reasonably inspect the line along this roadway. It seems unnecessary to determine this problem, however, owing to the disposition of the case which we are constrained to make with relation to the liability of the City of Chico. If this obligation to inspect the line at this place still rested upon the city, its neglect to do so for a period of two and a half months created the presumption of constructive notice of defects which had existed that entire length of time and constituted negligence on its part.

■ When a duty exists to inspect and maintain property in a safe condition, the presence of a conspicuous defect or dangerous condition of the appliances which has existed for a considerable length of time will create a presumption of constructive notice thereof. (*Dawson* v. *Tulare Union High School Dist.*, 98 Cal. App. 138 [276 Pac. 424]; *Wurzburger* v. *Nellis*, 165 Cal. 48 [130 Pac. 1052]; *Rafferty* v. *Marysville*, 207 Cal. 657 [280 Pac. 118]; 43 C. J. 1043–1057.)

■ The evidence is undisputed that at the time the deceased received the electric shock from which he died he was unlawfully engaged in cutting for his own use the limbs of the fallen tree in the branches of which the live high-power wire was concealed. This tree grew upon the Bidwell Park property and belonged to the City of Chico. Although, in · falling, the top branches of the tree extended beyond the property line and rested upon the public roadway, it, nevertheless, constituted a trespass against the city on the part of the deceased to unlawfully attempt to sever the limbs of the tree for the purpose of appropriating the wood to his own use. It therefore follows that the deceased was injured while engaged in the performance of an act of trespass against the defendant City of Chico. Cutting and removing the timber constituted a misdemeanor. (Sec. 602, Pen. Code.) An actual unauthorized entry upon the land of the defendant city for the purpose of unlawfully taking and removing the wood was not necessary to constitute trespass on the part of the deceased. An unlawful and tortious infringement of the rights of the city by cutting and taking its timber was sufficient to create the relationship of a trespasser. In *Leisure* v. *Monongahela Valley Traction Co.*, 85 W. Va. 346 [101 S. E. 737], it is said, "every person guilty of any tortious infringement upon the rights of another" is a trespasser.

■ The very act which constituted the trespass was the cause of his injuries. The city was therefore not liable for damages unless it had actual knowledge of the fallen wires and wilfully or wantonly inflicted or caused the injuries. The rule exempting the owner of property from liability for injuries sustained by a trespasser is concisely stated .in *Giannini* v. *Campodonico*, 176 Cal. 548, 550 [169 Pac. 80, 81], as follows:

"It is well settled that as against a trespasser or mere licensee the owner of property owes no duty to keep the premises in safe condition. The only duty is to abstain from willful or wanton injury." (19 Cal. Jur. 616, sec. 52; 45 C. J. 742, sec. 132; 9 R. C. L. 1207, sec. 17; 20 R. C. L. 57, sec. 53; *Lindholm* v. *Northwestern Pac. Ry. Co.,* 79 Cal. App. 34 [248 Pac. 1033].)

▮ A person who without license or permission climbs a pole upon which electric wires are attached, becomes a trespasser, and may not recover from the owner thereof for injuries sustained by coming in contact with live wires. (*Augusta Ry. Co.* v. *Andrews,* 89 Ga. 653 [16 S. E. 203]; 2 Joyce on Electric Law, 987, sec. 610.) ▮ Wilfulness and wantonness may not exist without actual knowledge of the danger. Since the evidence in the present case shows affirmatively that none of the agents of the City of Chico had any knowledge of the fallen and dangerous condition of the wires, and there was a total absence of evidence tending to indicate wilfulness or wantonness on the part of the city, it is relieved of all responsibility for the injuries which resulted in the death of plaintiff's intestate. It therefore becomes necessary to reverse the judgment in so far as it affects the defendant City of Chico.

▮ The fact that the deceased was a trespasser with respect to the defendant City of Chico by virtue of his wrongful violation of its property rights, in no sense exempts the defendant Pacific Gas and Electric Company from liability for negligence. The Electric Company had no property rights in the fallen tree which were interfered with. In spite of the exemption from liability on the part of the owner of the tree, the Electric Company still owed the deceased the duty of exercising due caution for his safety.

In 2 Joyce on Electric Law, 986, it is said: "The fact that one is a trespasser as between himself and a land owner is held not to relieve an electric company from the duty to exercise care towards the former and the jury may infer negligence from the omission of a guard wire."

In the case of *Guinn* v. *Delaware & A. Tel. Co.,* 72 N. J. L. 276 [111 Am. St. Rep. 668, 3 L. R. A. (N. S.) 988, 62 Atl. 412, 413], a guy-wire had been stretched by the defendant electric company over an open field across which people were accustomed to travel at will to and from

a ball ground in an adjoining field. The guy-wire broke and fell across a live electric wire. Thus charged with electricity the guy-wire dangled down into the grass where a boy who was crossing the field without license came in contact with it and was killed. The defendant electric company contended it owed the deceased no duty to preserve his safety for the reason that he was a trespasser. This theory was denied by the court, which held that although the land owner might set up this defense in a proper action, the defendant electric company could not avail itself of this exemption from liability. The court said:

"If (the deceased were) a trespasser, his wrong would be to the land owner alone, not a public wrong, nor a wrong to the defendant. The case differs from one where a trespasser or licensee seeks to recover of the land owner. A land owner may, in fact, reasonably anticipate an invasion of his property, but in law he is entitled to assume that he will not be interfered with. His right to protect his prop·erty and the use of his property is paramount. . . . The exemption of the land owner from liability as to trespassers and licensees is necessary to secure him the beneficial use of his land; but no reason exists for extending this exemption to the case where the rights of the defendant have not been interfered with."

The appellant Pacific Gas and Electric Company disclaims liability for the death of Roberts and seeks a reversal of the judgment on the grounds that (1) the electric line, including the poles and wires, was the property of the City of Chico, (2) the deceased was guilty of contributory negligence, and (3) the court erred in charging the jury.

It is true that the contract provided that the electric line was to become "the sole property of the applicant (City of Chico)." But the Electric Company reserved the use and control of the line for the purpose of transmitting over the wires electric energy for sale to a regular customer, namely the golf club. From a consideration of the undisputed record we must assume that the Pacific Gas and Electric Company reserved a joint control of the line with the City of Chico. At least these wires were used by the company without objection on the part of the city to transmit electricity to an independent customer of the company. It follows that the company therefore became re-

sponsible for failure to exercise due caution to inspect the line or to maintain a reasonably safe system and appliances for transmitting the electricity.

The duty of an electric company in conducting its business of handling and selling this dangerous commodity is stated in 9 Ruling Case Law, 1927, as follows:

"It is well settled that it is the imperative duty of such a company not only to install proper appliances, but also to make reasonable and proper inspection of such appliances, and to use due diligence to discover and repair defects therein, and a failure to do so constitutes negligence. Notice of a defect, in order to charge the company with liability therefor, need not be direct and express; it is enough that the defect has existed for such a length of time that it should have been known."

Ordinarily the question of whether due care has been exercised to inspect electric equipment and discover defects in the appliances is a matter to be determined by the jury. (9 R. C. L. 1218, sec. 25; 1 Joyce on Electric Law, 726, sec. 438b.)

The verdict of the jury in this case implies a finding that both defendants were guilty of negligence for failure to inspect the line. It is not contended that either of the defendants ever did inspect it. The defendant Electric Company reserved control over its transformers and apparatus at the club-house, together with the privilege of transmitting the electricity over the park line for sale to its customer at the golf club. It was therefore bound to maintain reasonable inspection of the lines of which it was making use for its own benefit and profit. A casual inspection of the wires extending from the main line through the park and along the road to the club-house would have disclosed the fallen tree and wires. This failure on the part of the company, although a like duty was imposed upon the City of Chico, rendered it liable for negligence.

It is ordinarily true that a company which neither owns nor *controls* the wires or appliances over which it merely transmits electric energy is not obliged to inspect the line and will not be liable for injuries sustained by reason of defective appliances. (9 R. C. L. 1204, sec. 15; *Hoffman* v. *Leavenworth L. H. & P. Co.*, 91 Kan. 450 [50 L. R. A. (N. S.) 574, 138 Pac. 632]; *Memphis Cons. Gas*

& *Elec. Co.* v. *Speers,* 113 Tenn. 83 [81 S. W. 595];
*Bristol Gas & Elec. Co.* v. *Deckard,* 10 Fed. (2d) 66.)
Except for the reservation of control and use of the appliances and line to supply the golf club with light and power, the Electric Company would have been relieved of responsibility. But when control, or even joint control, of an electric line is reserved and exercised as in the present case, the Electric Company will be liable for a lack of due care.

It is asserted by the Electric Company that because the golf club to which it sold and furnished electricity was maintained on the park property under the supervision of the city park commission and that the city paid for a part of the equipment thereof, that therefore the sale of electricity to this golf organization was in truth a furnishing of energy to the City of Chico, and that the company, therefore, reserved no independent control over the line and is exempt from liability. It is true that Bidwell Park was a gift to the city, consisting of 2,280 acres of land, which was conveyed by the donor with the express reservation that "the second party (City of Chico) shall use the same for the purpose of a public park for the benefit of the citizens and residents of said City of Chico," and that a violation of the conditions under which the park was conveyed would have the effect of causing the title to revert to the grantors. It is also true that the city never did convey title to the golf course. The city also paid for the construction of the electric line from the Five Mile dam to the club-house; for the foundation of the club-house and for sinking a well on the premises. But the record also shows that this golf club was an organization independent of the city or park administration. It consisted of a large number of members residing both in and outside of the City of Chico, who pay $18 each per year, as membership fees, together with the customary green fees. This club constructed and maintained the course and club-house at its own expense and also contracted and paid for the electricity which it consumed. Mr. Williamson, the chairman of the Bidwell Park playground commission, testified in this regard: "We have had nothing to do with the running of that Club House or with the running of the Golf Course. . . . Q. Isn't it a fact . . . that every dollar of expenditure for the support, maintenance, and upkeep of that Golf

Course, the employees and all other incidental expenses of every nature and character are paid by what is known as the Chico Golf Club? A. Yes, as far as I have any knowledge; they are certainly not paid by the Bidwell Park and Playground Commission. . . . Q. Your Commission has nothing to do with the payment of, for instance, the caretaker of that Golf course? A. No. Q. Or the electrical energy that is supplied there? A. No, sir. Q. Or for paying for the road in the Golf Club or repairing it or fixing it or anything else on the place? A. No sir." It also appears that to avoid the forfeiture clause of the park deed of conveyance, it was arranged that no persons should be denied the privilege of playing golf on the course, although they refused to pay the designated fees therefor. However, it does not appear that anyone ever refused to pay these fees.

Under such circumstances it seems clear that the golf club was an organization distinct from the City of Chico, and constituted an independent customer to whom the Electric Company regularly sold its electric energy. There is nothing in the record of this transaction which tends to show that the Electric Company relinquished its control of the line or appliances by means of which the golf club was furnished electricity, or that the City of Chico held or exercised the exclusive control thereof. The very fact that the terms of the contract provided that "all transformers, switches, (and) the meters furnished by the company for use in connection with said line shall at all times be and remain the sole property of the Company," indicates an express reservation of these appliances so that the company might control the use and sale of electricity to the golf club or to any other independent customers which it might procure. We are of the opinion that the record does not disclose a relinquishment of the entire control of the electric line on the part of the company, and that the company is therefore not relieved from responsibility for negligent failure to inspect the line.

It is claimed that the deceased was guilty of contributory negligence in going among the branches of the tree when the wires were plainly visible as they sagged down beneath the fallen tree from the cross-arms on the poles from either side. The wires, however, were concealed

by the foliage of the tree and by the vines. The deceased did not live in that immediate vicinity and it does not appear he was familiar with the use of this electric line. As a reasonable man he may have assumed that wires which were pulled down to the ground and lay beneath the fallen tree were either broken or carried no load of electricity. Under the circumstances of this case, the existence of contributory negligence was a question for the jury to determine. (*Giraudi* v. *Electric Imp. Co.*, 107 Cal. 120 [48 Am. St. Rep. 114, 28 L. R. A. 596, 40 Pac. 108]; *Howell* v. *San Joaquin L. & P. Corp.*, 87 Cal. App. 44, 54 [261 Pac. 1107]; *Foley* v. *Northern California Power Co.*, 14 Cal. App. 401 [112 Pac. 467].)

The defendant Electric Company complains of two instructions, the first of which was given on the court's initiative and the second at the request of the plaintiff. The last paragraph of the following instruction is challenged as erroneous:

"I instruct you that under the application or contracts admitted in evidence, the City of Chico became the owner of the power line in question, with the exception of the transformers, meters and ground wires which were the property of defendant Power Company and in the absence of a provision otherwise, the duty of maintaining and repairing such power line devolved upon said City.

"And I further instruct you that if you find that the defendant Power Company was using said power line for the purpose of conducting electricity thereover, and through and by means of its own transformers, meters and other necessary devices and thereby furnishing and selling electric power and light to individuals or organizations other than or in addition to the City of Chico and its governmental agencies then, and in such event, the duty also devolved upon said Power Company to see to it that the said power line was maintained and kept in such repair as not to endanger those who may rightfully be in close proximity to the said power line."

It is asserted that the two paragraphs of the foregoing instruction are conflicting in that the first paragraph assumes that the City of Chico was the sole owner of the electric line and thereby became responsible for the maintenance and repair thereof, while the last paragraph charged

the jury that if they found that the Electric Company used the line to furnish its customers other than the City of Chico with electricity, that it also owed the deceased a duty to keep the line free from defects and dangerous conditions. This was a correct statement of the law under the circumstances of this case. Assuming, as we have heretofore declared, that there is substantial evidence from which the jury could determine that the Electric Company did reserve the use and control of the line for the purpose of selling and transmitting its energy to the golf club and that this organization constituted a customer separate and distinct from the City of Chico, then the Electric Company would be jointly liable with the city for failure to keep the line in a reasonably safe condition. This obligation on the part of the Electric Company exists because of its reservation of the use and joint control of the line, and in spite of the actual ownership of the wires and poles by the city. Under such circumstances this instruction was not conflicting or misleading.

 Finally, it is contended that the following instruction was erroneous and prejudicial: ''The jury is instructed that electric light companies which are permitted to use for their own purposes roads that are generally used and traveled by the public are required to exercise due care in the construction and inspection and maintenance of their wires and poles to the end that travelers along such roads will not be injured by their appliances. Where the danger to be reasonably apprehended is great, the care and vigilance must be commensurate.''

This instruction correctly stated the law applicable to the facts of this case. The defendant company constructed the line contrary to contract so that it extended for at least 2,300 feet along the public roadway, in which space the accident occurred. On the assumption that the company retained a joint right to use and control the line for the purpose of supplying its independent customer at a point beyond this place where the wires extended along the road and where the accident occurred, it would be required to use due diligence to protect those who traveled this road against a defective and dangerous condition of the wires. There was therefore no error in this instruction. The jury

was fully and fairly charged. There was no miscarriage of justice.

The judgment is reversed in so far as it affects the defendant City of Chico. Otherwise the judgment is affirmed.

Jamison, J., *pro tem.*, and Finch, P. J., concurred.