10758. CITY OF THOMASTON *v.* ATKINSON.

1. " A broken or fallen wire in a street, charged with a dangerous current of electricity, affords a presumption of negligence on the part of the owner of the wire." It is for the jury to decide every disputed issue of fact made by the evidence; and the verdict in favor of the plaintiff in this case cannot properly be set aside on the ground that the evidence fails to authorize a finding that the defendant was liable. Nor can it be held that the amount of the verdict is unauthorized.

2. The excerpt from the charge of the court relative to the use of the annuity tables in the event the jury should see proper to employ them in the computation required to reduce to its present or cash value the amount which they might find as gross damages, although admittedly erroneous, was necessarily harmless, since the rule as stated failed to furnish any guide whatever by which the gross damages could be reduced to their present value, and consequently the verdict returned could not have been reached in accordance with the erroneous. instruction, and it must therefore be assumed that the verdict was arrived at by the application of some other and correct rule given them in charge, or by the use of some other method known to and approved by them.

3. The other grounds of the motion for a new trial, pertaining to alleged errors in the charge and in failing to charge, are without merit.

DECIDED AUGUST 16, 1920.

Action for damages; from Upson superior court — Judge Searcy. June 9, 1919.

Application for certiorari was denied by the Supreme Court.

Mrs. Atkinson sued the City of Thomaston for damages on account of the death of her husband, which was alleged to have

been caused by contact with an electric wire. The trial of the case resulted in a verdict against the city for $5,000, and, the defendant's motion for a new trial being overruled, it excepted.

W. Y. Allen, M. H. Sandwich, R. L. Berner, for plaintiff in error.

James R. Davis, Claude Worrill, Lawton Nalley, contra.

JENKINS, P. J. The evidence adduced in behalf of the plaintiff tended to show substantially the following facts: Her husband, with his young son, was walking from their home in East Thomaston along Thompson street into the City of Thomaston. It was the first time they had passed along this street. The right of way of this public street was 30 feet wide, and within it a roadway 18 feet wide had been opened up and laid out. No sidewalk had been constructed, but within the right of way and along the elevation of a slight embankment there was a well-defined and beaten pathway, used by pedestrians and the public generally. Along and by the side of this pathway was stretched a line of poles on which were strung two wires. The city had at a previous time maintained from its municipal light system an arc-light out at the end of this line of wire, near a residence which had been there, but, the residence having been burned, this light had been discontinued for some three or four years and the line of wire referred to had not thereafter been made use of in any way. The insulation had become worn and rotten and the wire had become exposed. Some three months previous to the date of the homicide one of the posts on this line was blown nearly over, away from the street, so that, as left leaning, its top stood but a few feet above the ground. Soon thereafter and several weeks or months prior to the date of the homicide the electric wire had pulled away from the post, and, with the wooden knob and glass insulator by which it had been attached to the post, remained hanging along and over the said path and at the place referred to, only some three to five feet above the same. When the deceased, accompanied by his nine-year old son, walking in the path, had reached the point referred to, the father, thinking the wire was a telephone wire, took hold of the knob left hanging on the wire, and explained to his son how it was fastened to the pole. After doing this without injury, he advanced a few additional steps forward in the path, and, in order to lift the sagging wire out of the path,

took hold of it with his left hand, but was hit by the current and killed.

The defendant denied the existence of the defined public pathway referred to. It sought to show, both by oral testimony and by photographs taken a day or two after the homicide, that the wire, though sagging, hung well above the head of the decedent when walking or standing; that he voluntarily left the roadway in which he and his son had been traveling, and met his death by deliberately reaching up and catching hold of what he supposed was a telephone wire, in order to show his son how it had been attached to the pole, or that in thus pulling it down he temporarily lowered the wire, which was the occasion of his thereafter catching hold of it after taking a few additional steps forward; which act it is contended was in any event negligent and unnecessary, as he could easily have avoided the wire by walking out of the path and around it.

1. Counsel for the plaintiff in error presents an exceedingly forceful argument in support of their contention that the judgment of the court below, overruling the motion for a new trial, should be reversed on the theory that the verdict was contrary to law, as being altogether without evidence to support it. With this proposition, however, we cannot agree. "A broken or fallen wire in a street, charged with a dangerous current of electricity, affords a presumption of negligence on the part of the owner of the wire." *Eining* v. *Georgia Railway & Electric Co.,* 133 *Ga.* 458 (66 S. E. 237). While there was some dispute as to whether or not the pathway in which the deceased met his death was a defined and generally used public pathway, the main contest in this case centers around the question as to whether or not the homicide was brought about by the negligence of the deceased himself, and whether it could have been avoided by the exercise of ordinary care on his part. As will be seen by reference to the foregoing statement of the contentions of parties as made by the evidence at the trial, the jury were called upon to resolve a number of disputed issues of fact. Among these issues is the question as to whether the deceased ought to have known that the wire he caught hold of at the time of his death, in order, as the plaintiff contends, to push it out of his pathway, was an electric wire, and likely to be charged

with a deadly current. It appears to be undisputed that the deceased thought the wire was a telephone wire; we have been unable to find in the record any evidence going to show that he knew that one of these wires was an electric wire and likely to be charged with current, and that he merely guessed wrong ·as to which of the two wires he was catching hold of. The evidence is not clear as to whether either of the wires was a telephone wire. It is clear, from the evidence of witnesses introduced on behalf of the defendant, that the use of this line of electric wires had been entirely discontinued for a number of years prior to the date of the homicide. The reason given by the defendant for allowing the line of wire, all use of which had long since been discontinued, to remain charged with current and stretched along this highway is that the authorities had expected that houses would be erected in that vicinity, but this expectation had not materialized. It seems also clear that several months had elapsed since the post had blown over, and that the wire had pulled loose from the post and remained sagging over the path for a period of at least several weeks. In view of all the evidence in the case, we think it was a question for the jury to determine whether the deceased ought to have known of the danger in taking hold of the wire which occasioned his death, in his endeavor to push it out of the public pathway. *Sou. Bell Telephone &c. Co.* v. *Davis,* 12 *Ga. App.* 28, 37 (76 S. E. 786). We think the facts materially differ from those· outlined in *Columbus Railroad Co.* v. *Dorsey,* 119 *Ga.* 363 (46 S. E. 635), where it was held by the Supreme Court that no recovery could be had for the death of an experienced lineman of a telephone company who was killed by negligently coming in contact with a deadly and exposed wire while climbing a pole on which the wires were strung, he knowing or being able to know by ordinary intelligence of the danger from such exposure. The question in that and similar cases was whether or not the lineman negligently touched the wire, whereas one of the main issues in this case was whether it was negligence for him to touch it.

It will be noted that according to the evidence for the plaintiff, the deceased did not meet his death in voluntarily catching hold of the wooden peg, in order to show his young son how it had had been fastened to the pole, but.had left this point, was con-

tinuing his journey, and had advanced several steps forward, when he met his death by undertaking to push the sagging wire out of his pathway. If the pathway was a public pathway, which he had the right to occupy and travel in, he did not become a mere volunteer in so using it, merely because he had previously caught hold of the peg as indicated, but the question at last is whether his act in undertaking to push the wire out of his pathway, under his belief as to its safety and under the facts and circumstances revealed by the evidence, amounted to such lack of ordinary care as would bar a recovery.

2. Among other rules and instructions given the jury upon their duty to reduce to its present worth whatever amount, if any, they might find to be the gross sum chargeable as damages against the defendant, the learned trial judge charged them, in reference to their right to use the annuity tables, as follows: "If you have found from the evidence the value of the plaintiff's life as a whole,—that is the gross value of the plaintiff's life,—in order to reduce that value to a sum representing the present or cash value of the sum found by you, as representing the gross value of the plaintiff's husband's life, you would take this gross sum, as you find it to be, if you find such an amount, and take the amount of dollars or fraction of dollars in the column under seven per cent., opposite the age of the plaintiff's husband in this annuity table, and you multiply the gross value of his life, as you find it to be, by these figures, which you find under this seven per cent. column; then you would have, by the use of this table, the present cash value of such gross sum." In a written opinion the trial judge overruled the motion for a new trial, on the theory that this erroneous instruction must have been harmless, since more than one rule was given for making this calculation, and the jury were further instructed that any correct rule known to and approved by them might be employed in arriving at the present or cash value of the amount they might find as the gross damages. He thought it probable, if not certain, that the jury did not make use of this erroneous instruction, but more probably employed some other rule, since, in his opinion, if the erroneous rule had been used, the amount of the verdict could not have been arrived at. If it is possible to satisfy ourselves that in determining the amount of the verdict the jury

must have excluded from consideration this admittedly erroneous instruction, the giving of such excerpt from the charge would not authorize a reversal, but would for that reason be treated as harmless. There are any number of adjudications to the effect that a verdict will not be disturbed on account of erroneous instructions which were manifestly and necessarily harmless to the complaining party. For a number of reasons an erroneous charge does not necessarily amount to reversible error. For example, the verdict as rendered may have been demanded, the erroneous charge may have been invited by the complaining party, the inaccuracy may consist in a mere patent slip of the tongue, it may relate to an irrelevant or immaterial matter such as could not reasonably have misled the jury in respect to the true issue or issues involved, the error complained of may be such as could militate only against the rights of the party who does not object. It is not our understanding of the law, however, that any presumption exists that an erroneous charge is harmless. Indeed, the presumption is the other way, and, as a general rule, in order to treat as harmless an erroneous instruction, there must be some way of satisfying ourselves that it in fact was harmless.

In the instant case one of the contested issues relates to the amount of the defendant's liability, if any. The deceased was 38 years old, with an ordinary or average expectancy of nearly 29 years. He was earning at the date of his death $1.25 per day. On the basis of such average expectancy and of continued like earning capacity, an application of the rule would have resulted in a verdict of about $125,000. The defendant in error says that the rule was therefore manifestly disregarded. But there was medical testimony to the effect that plaintiff was afflicted with an incurable malady, which would necessarily have terminated his life within a period of two or three years. It was within the right of the jury, if they saw proper to do so, to accept this testimony. It is consequently argued by counsel for the plaintiff in error that the verdict rendered, for $5,000, might have been arrived at by an application of the erroneous rule above stated, and that there is no means by which it can be shown that such was not the case. In support of this argument they contend that if the jury did in fact accept the medical testimony

just referred to, and applied the erroneous rules together with other instructions given them to the effect that they could consider any infirmity of the deceased, and consequent reduction in his future earning capacity, it is easy to see that the amount of the verdict returned might have been thus arrived at. While this supposition amounts only to a surmise, it is sufficient, they say, to show that there is no means of satisfying ourselves that the erroneous rule was harmless, since the amount of the verdict in no way indicates just how it was reached, while it could have been thus arrived at. The argument of counsel for the plaintiff in error convinces us that, as a purely mathematical proposition, it is possible and even easy to say that the jury could have reached the amount of the verdict by applying the erroneous rule. But while mathematically possible, it does not seem reasonably so. While we differ somewhat with the trial judge, who thinks that the amount of the verdict itself shows that it could not have been thus arrived at (for mathematically it easily could have been), we go further than he seems to go in thinking that it is merely more probable that they did not do so. In our opinion, it is manifest that they could not and did not. The excerpt complained of states within itself that the object of the instruction given was to provide a method by which the gross damages representing future earnings could be *reduced* to its present or cash value. As we see it, it is altogether impossible to suppose that an upright and intelligent jury would undertake to reduce the gross amount of damages representing future earnings down to its present or cash value by multiplying such total or gross sum by 11.033. On the very face of it, this would tremendously increase, and not reduce the amount, and would be contrary to not only the manifest but the expressed purpose of the rule. This portion of the charge, therefore, cannot be taken to have furnished any sort of rule or guide whatever by which the gross sum of future earnings could be reduced to its present cash value; and since on its face it entirely fails to furnish such a rule, it would be altogether unreasonable to suppose that the jury could possibly have sought to apply it. *Atlanta & West Point Railroad Co.* v. *Miller,* 23 *Ga. App.* 347, 353 (9) (98 S. E. 248).

3. The judge gave to the jury fully and fairly the principle of

law to the effect that even though the defendant might have been guilty of negligence, yet if the injury could have been avoided by the exercise of ordinary care on the part of the deceased, the plaintiff could not recover. The trial judge, quoting literally from the plea of the defendant, charged the jury as follows: "Defendant further says that on the day it is alleged the husband of plaintiff was killed early in the morning, that plaintiff's husband was walking in Thompson street, that he left said street and got on a side place or bank or pole outside of the street, without any cause or necessity, and negligently and recklessly seized one of the wires with his bare hand; that the husband of the plaintiff could have avoided the injury to himself by the exercise of ordinary care and diligence." Defendant excepts to this charge because the judge did not on his own motion add thereto the following: "that is to say, by selecting the safe way by which to go to the City of Thomaston," and further excepts to the failure of the judge to charge, without request, the same principle, as follows: "When there is a safe and a dangerous way in which a pedestrian may walk and arrive at his destination, it becomes the duty of the pedestrian, in the exercise of ordinary care, to select the safe way, and if he abandons the safe way and undertakes to prosecute his journey in a path with an overhanging electric wire, which an ordinarily prudent man would not do, and is killed as the result of so doing, his widow would not be entitled to recover." The only eye-witness to the homicide was the deceased's son, who is not a party to the litigation. There is really no testimony of probative value going to show that the deceased left the road and entered upon the path at about the place where the homicide occurred. It is true that the testimony of this boy, given at the coroner's inquest, was admitted for the purpose of impeachment, and the record of his testimony thus previously given might so indicate, but this is all. Had the evidence authorized such a charge, and had proper request been made therefor, a failure to comply with the request might have been reversible error. *Metropolitan Street Railroad Co.* v. *Johnson,* 90 *Ga.* 500 (16 S. E. 49). But see *Southern Ry. Co.* v. *Grizzle,* 131 *Ga.* 287 (3) (62 S. E. 177). There was no error in the charge or in the failure to charge concerning the city's duty in keeping safe its public roadway.

*Judgment affirmed. Stephens, J., concurs.*

SMITH, J., dissenting. I cannot agree with the rulings of a majority of the court. The only eye-witness to the accident was the son of the deceased, and this son was a small boy. His testimony was very uncertain and contradictory. The great weight of the testimony tended to show that the deceased was a volunteer, and that the electric wire which caused his death was not in fact hanging over the road or path along which he was traveling, but was up on an embankment beside the path and could not be reached from the road. In view of these facts and the further fact that the verdict was quite large, I am of the opinion that the error of the court in charging on the mortality tables incorrectly, this being admitted by the presiding judge, is such as to require a reversal. It is possible, if not probable, that some member of the jury was misled by this erroneous instruction.