[Civ. No. 5333. First Appellate District, Division One.—April 2, 1926.]

## WALTER ANDERSON, Respondent, v. SOUTHERN CALIFORNIA EDISON COMPANY (a Corporation), Appellant.

[1] EASEMENTS—RESTRICTIONS ON OWNER OF SERVIENT TENEMENT—EASEMENT UNDER GRANT.—An easement is a restriction upon the rights of property of the owner of the servient tenement, and in the case of a grant it may be of such a character as to altogether exclude the owner of the servient tenement from any rights in the enjoyment of his property.

[2] ID.—EXTENT OF SERVITUDE—USER—PRESCRIPTION.—The extent of the servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired; but where the easement is acquired by prescription or operation of law, its character and extent are fixed and determined, under section 806 of the Civil Code, by the user under which it is gained.

[3] ID.—SECONDARY EASEMENTS—REASONABLE EXERCISE OF RIGHT.—Every easement includes "secondary easements," consisting of the right to do such things as are necessary for the full enjoyment of the easement; but this right must be exercised in such reasonable manner as not to increase injuriously the burden upon the servient tenement.

[4] ID.—RIGHT OF WAY FOR ELECTRIC POWER LINE—RIGHTS OF SERVIENT ESTATE.—The interest of an electric power company under an asserted easement over land for a right of way for its lines does not abridge the right of the owner of the land to use it for any purpose which does not conflict or defeat the rights of the

---

1.  See 9 Cal. Jur. 943.
2.  See 9 Cal. Jur. 951; 9 R. C. L. 788.
3.  See 9 Cal. Jur. 954.
4.  See 9 Cal. Jur. 953.

company in the use of its lines, the interest of the company not being an exclusive one.

[5] ID.—RIGHT TO MAINTAIN AERIAL POWER LINE—USE OF SURFACE OF LAND.—The right of an electric power company to maintain an aerial power line supported by poles resting in the ground upon privately owned land does not affect the land owner's right to the surface use of the land, except in so far as such surface is reasonably necessary for the purposes of ingress or egress and for maintenance and repair.

[6] ID.—ERECTION OF BUILDING BY OWNER OF SERVIENT TENEMENT—RIGHTS OF POWER COMPANY NOT RESTRICTED.—Where a building constructed on the land by the land owner does not restrict or limit the power company's easement and the company does not object to the erection and maintenance of the building, but arranges for the use of higher poles to remove danger from the proximity of its wires to the roof, the company cannot complain of the building's existence, so long as it does not interfere with its alleged interest in the land, and the land owner and those deraigning interest through him have the right to enjoy the full benefit of the improvement, and in so doing cannot be considered trespassers or mere licensees as to the company.

[7] ID.—LIMITATION ON RIGHTS OF POWER COMPANY—NONINTERFERENCE WITH SURFACE USE.—In the enjoyment of its asserted interest, it is the duty of the power company to keep within its limited interest and to erect its aerial right of way so as not to interfere with the reasonable use of the surface of the soil, and failing to do so, it becomes itself a trespasser on the rights of the owner and those claiming under him.

[8] ID.—PREVENTION OF INJURY TO PERSONS LAWFULLY USING SURFACE OF LAND—NEGLIGENCE—CARE.—Where an electric power company does not have the exclusive and unlimited right to the surface of the soil upon which its poles supporting its power lines are installed, it is its duty in using the dangerous force of electricity to exercise great care to prevent injury to persons making lawful use of the property.

[9] NEGLIGENCE—ELECTRIC POWER COMPANIES—PLACING OF WIRES—CARE.—From the very nature of its business an electric company using highly charged wires owes a legal duty toward every person who, in the exercise of a lawful occupation in a place where he has a legal right to be, is liable to come in contact with the wires, to see that such wires are properly placed with reference to the safety of such persons, and that either the wires be insulated or placed beyond the danger line of contact with human beings.

8.   See 10 Cal. Jur. 184.

[10] ID.—DANGEROUS POSITION OF ELECTRIC WIRES—DUTY OF ELECTRIC POWER COMPANY—PREVENTION OF INJURY—CARE.—An electric company is required to use very great care to prevent injury to person or property, and it is sufficient proof of negligence for it not to raise its wires so high above a roof on which they are placed that those having occasion to go there will not come in contact with them.

[11] ID.—AVOIDANCE OF DANGER—PERSONS SUI JURIS—DEGREE OF CARE. The law imposes upon a person *sui juris* the obligation to use ordinary care for his own protection, the degree of which is commensurate with the danger to be avoided.

[12] ID.—ACTION FOR DAMAGES—CONTACT WITH HIGH VOLTAGE ELECTRIC WIRE—CONTRIBUTORY NEGLIGENCE—EVIDENCE.—In an action against an electric power company for damages for personal injuries sustained by plaintiff through coming in contact with high voltage wires maintained by the company over the roof of a building on which plaintiff was working as a painter's apprentice, the questions of the company's negligence in maintaining the wires in dangerous proximity to the roof of the building and of plaintiff's contributory negligence in forgetting about the wires after having seen them are for the jury to determine from all the facts and circumstances of the case.

[13] ID.—FORGETTING KNOWN DANGER—WANT OF ORDINARY CARE—QUESTION FOR JURY.—To forget about a known danger is not negligence, unless it shows the want of ordinary care, which is a question for the jury.

[14] ID.—PERSONAL INJURIES—VERDICT—ABSENCE OF PASSION AND PREJUDICE—EVIDENCE.—In this action for damages for personal injuries sustained by plaintiff through coming in contact with high voltage wires maintained by an electric power company over the roof of a building on which plaintiff was at work as a painter's apprentice, where the evidence showed that plaintiff suffered second degree burns of the back and both heels, which produced severe pains and nervousness which lasted several days, and incapacitated him for work for several weeks, and that subsequently one of the burns developed the characteristics of a third degree burn, a verdict of three thousand dollars was not so excessive as to suggest, at first blush, passion, prejudice, or corruption on the part of the jury.

10. See 10 **Cal.** Jur. 191.
11. See 19 **Cal.** Jur. 579; 20 R. C. L. 25.
12. See 10 **Cal.** Jur. 203.
13. See 19 **Cal.** Jur. 586; 20 R. C. L. 110.
14. See 8 **Cal.** Jur. 837.

[15] ID.—EXCESSIVE DAMAGES—DUTY OF TRIAL COURT—APPEAL.—The question of excessive damages is one that is first addressed to the trial court, which practically must bear the whole responsibility in every case, and the power of the appellate courts over excessive damages exists only when the facts are such as to suggest, at first blush, passion, prejudice, or corruption on the part of the jury.

---

(1) 19 C. J., p. 862, n. 1, 2, 3, p. 967, n. 81.   (2) 19 C. J., p. 967, n. 82, 90.   (3) 19 C. J., p. 967, n. 80, p. 974, n. 97, p. 975, n. 99. (4) 19 C. J., p. 975, n. 8, 9; 20 C. J., p. 311, n. 4 New.   (5) 20 C. J., p. 311, n. 4 New.   (6) 19 C. J., p. 978, n. 51; 20 C. J., p. 311, n. 4 New.   (7) 20 C. J., p. 311, n. 4 New.   (8) 20 C. J., p. 343, n. 80. (9) 20 C. J., p. 345, n. 7, 8, p. 346, n. 9, 11.   (10) 20 C. J., p. 386, n. 49.   (11) 29 Cyc., p. 507, n. 47, p. 512, n. 79, 85.   (12) 20 C. J., p. 390, n. 75, p. 392, n. 92.   (13) 29 Cyc., p. 515, n. 99, p. 640, n. 13. (14) 17 C. J., p. 1087, n. 56, p. 1091, n. 85.   (15) 4 C. J., p. 869, n. 96, p. 870, n. 97, p. 874, n. 39.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles S. Burnell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Roy V. Reppy, E. W. Cunningham and Gail C. Larkin for Appellant.

Swaffield, Swaffield & Pray, C. Douglass Smith, Frank P. Farrell and Russell H. Pray for Respondent.

TYLER, P. J.—Action to recover damages for injuries caused by contact with a high voltage wire maintained by defendant company, a public service corporation, as a part of its electrical distributing system.

Plaintiff claimed that the defendant company negligently maintained its wires in dangerous proximity to the roof of a certain building upon which he was working, in consequence of which he received the injuries complained of. The defendant denied any negligence on its part and alleged contributory negligence on the part of the plaintiff. It also set up in its answer by way of separate defense that at the time of the accident plaintiff was a trespasser upon its property. At the conclusion of plaintiff's case a motion for a nonsuit was made and denied. After trial the jury

returned a verdict in favor of plaintiff in the sum of three thousand dollars. A motion for a new trial was made and denied. This is an appeal from the judgment and order. As grounds for reversal appellant claims that the evidence fails to prove negligence on the part of defendant company, or a duty of care owed from it to plaintiff and the trial court therefore erred in denying a motion for a nonsuit and in refusing to instruct the jury to return a verdict for defendant. That the court likewise erred in refusing to give certain instructions requested by defendant. It is also claimed that the damages are excessive and not justified by the evidence. These alleged errors are relied upon for a reversal of the judgment. The facts are practically without conflict. Defendant corporation is engaged in the business of distributing electricity to customers in the county of Los Angeles. In the year 1910 it constructed a power line parallel to Cherry Street, in the Signal Hill district, Los Angeles, through territory which was then and now is farming and agricultural in character. The wires used were three in number; they were small in diameter, consisting of No. 6 bare copper wire, insulated wires not being used.

The poles supporting the line were installed upon private property five feet from the road. They were forty feet high and the wires at the lower point were about thirty feet from the ground. The line carried eleven thousand volts of electricity. At the time of the accident there was a sag in the wires. There is testimony to show that this sag was normal. The place where the accident occurred was known as "farm lot No. 7." Defendant company had attempted to procure an easement of a right of way over this particular parcel of land from the owner, but was never able to acquire this interest. The R. H. Herron Company, affiliated with the Pittsburg Oil Company, had rented this particular property from the owner in the year 1921, and the following year it constructed a corrugated iron building thereon directly under the transmission wires above described. Upon the completion of the building the wires passed directly over the peak of the roof, one and one-half to five feet from the front end thereof, with a clearance of about three feet. During the construction of the building two men employed by the contractor had been injured by

reason of the close proximity of the wires to the building. The company was notified by the contractor of this fact. Several of the employees of defendant company, including the superintendent, had noticed the dangerous condition of the wires and they too had notified their company of this condition. No claim was ever made by the company that the improvement interfered with any easement claimed by it, but, on the contrary, prior to the happening of the accident in question, an order was placed with it by its officers for longer poles, but the company had none on hand at the time and they were not procured until some time in June, 1922. It was also claimed by defendant that at the time complaint was made the city of Long Beach had refused permission to cut the line because of the interruption of service which would result therefrom, and such permission was not granted until the day of the accident.

Other testimony is to the effect that the power transmitted by the wires was used for pumping water for use by the city. The officer in charge of the water department of the city of Long Beach testified that the current could have been shut off for a period of three or four hours, as the city had another source of supply that could be used. On July 26, 1922, the manager of the owner of the newly constructed building ordered the Harris Sign Company to paint a sign thereon. On this day plaintiff was employed by such company as a painter's apprentice and had been so employed for about a year and a half immediately prior thereto. He was ordered to accompany another employee to assist in the performance of the work. In order to accomplish their task it was necessary to swing a stage across the front part of the building. The painter and plaintiff proceeded to the roof for the purpose of fastening wooden blocks thereon to properly secure the stage upon which they were to work. Plaintiff took the lead, carrying blocks, a hammer, and some tools. When he had reached the roof he observed the wires, about three feet above the building and some twelve to twenty feet away. The wires were very small, being only one-sixteenth of an inch in diameter, according to the records of the company, and, as above stated, they were not insulated. For these reasons both plaintiff and his fellow-servant were under the impression that they were telephone wires. There was nothing to indicate that they carried a high voltage

of electricity. Plaintiff, carrying his tools, approached the wires, straddling the peak of the slanted corrugated iron roof, stooping at times and looking down. When he came to the first wire he bent down to pass under it, his hands and feet touching the roof. When directly under the wire he raised up, but, according to the testimony of his companion, no part of his body touched the wire, it being three or four inches therefrom. There was a flash, plaintiff was thrown in the air and rendered unconscious and his body started to roll down the roof. His companion went to his assistance and prevented him from falling therefrom. Plaintiff received second degree burns on his back and upon the heels of both of his feet, and in consequence thereof was incapacitated for work for twenty-six days.

It is claimed by appellant company that the evidence as above recited shows plaintiff to have been a trespasser or mere licensee, to whom the company owed no duty of care except not to be actively or overtly negligent, and that under such circumstances there could be no negligence, there being no duty of care.

The conclusion of appellant that plaintiff was a trespasser is based upon its claim that it had acquired an easement of right of way over the lands in question, and that this being so, defendant owed no duty to plaintiff to keep its premises safe. Under its asserted easement appellant claims that it is not limited to the mere space actually occupied by the wires, but also to that space reasonably necessary for the use of the wires as high voltage transmission lines. In asserting an easement in the land in question defendant does not claim that it acquired such interest by express grant, and, indeed, it could not successfully do so, as the evidence shows conclusively that it failed in this attempt. The assertion of its title is based upon two alleged theories. It is first claimed that under the decision in *Gurnsey* v. *Northern Cal. Power Co.*, 160 Cal. 699 [36 L. R. A. (N. S.) 185, 117 Pac. 906], the company acquired the asserted interest. In that case it was held that where a public service corporation has entered upon land and erected poles and wires in connection with its business, though the entry was without right, and the owner fails to bring any action until public interest, by reason of the construction of the work, has intervened, the right of such owner to maintain ejectment against

such public service corporation will be denied and the owner will be remitted solely to his action for damages as the measure of his compensation. It is there further declared that this exception, which forms the rule as to public service corporations, is not based upon any consideration of the rights pertaining to the public corporation itself, nor solely upon the doctrine of estoppel of the owner, but is based mainly upon the great principle of public policy under which the rights of the citizen may be abridged in the interest of the public welfare.

The second theory advanced by appellant company for the support of its claimed easement rests upon a claim of title to the asserted right by adverse possession. We do not think we are here seriously concerned with the question of the respective rights of the owner of the land and the company in the easement in question. This is not an action between the parties to determine such rights. Assuming some interest in the land to exist in favor of the company or the public, to the unlimited and unrestricted right to have its wire pass over the lands, the question with which we are concerned is the duty of the company to exercise care in the use of the alleged easement. [1] An easement is, of course, a restriction upon the rights of property of the owner of the servient tenement. In the case of a grant it may be of such a character as to altogether exclude the owner of the servient tenement from any rights in the enjoyment of his property. [2] The extent of the servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired. Where, however, the easement is acquired, as here, by prescription or operation of law, its character and extent are fixed and determined by the user under which it is gained. (Civ. Code, sec. 806.) A right so acquired is *stricti juris* and cannot extend beyond the user. [3] Every easement, it is true, includes "secondary easements," consisting of the right to do such things as are necessary for the full enjoyment of the easement; but this right is limited, and must be exercised in such reasonable manner as not to increase injuriously the burden upon the servient tenement. (*North Fork Water Co.* v. *Edwards,* 121 Cal. 662 [54 Pac. 69].) [4] Whatever interest defendant company may have in the land in question by reason of the asserted easement, the right of the

owner thereof to its use of the land for any purpose was not abridged provided only that such use did not conflict or defeat the rights of the company in the use of its lines. In other words, the interest of the company was not an exclusive one.

[5]    Giving the evidence the full force contended for it shows at most a right for maintenance of an aerial power line supported by poles resting in the ground and does not affect the right of the owner to the surface use of the land except in so far as such surface is reasonably necessary for the purposes of ingress or egress and for maintenance and repair.    [6]    There is no evidence in the record to show that the presence of the building in any manner restricted or limited defendant's alleged easement or that the company ever objected to its erection or maintenance. On the contrary, they had arranged for the use of higher poles to remove the dangerous condition. So long, therefore, as the structure did not interfere with defendant's alleged interest, it could not complain of its existence, and the owner of the land and those deraigning interest through him had the right to enjoy the full benefit of the improvement, and in thus enjoying it they could in no manner be considered trespassers or mere licensees as to the company.    [7]    In the enjoyment of· its asserted interest, it was the duty of the defendant to keep within its limited interest and to so erect its aerial right of way as not to interfere with the reasonable use of the surface of the soil to which the owner had made avail. In failing to do so, it became itself a trespasser on the rights of the owner and those claiming under him. (*Citizens' Telephone Co.* v. *Cincinnati Ry. Co.,* 192 Ky. 399 [18 A. L. R. 615, 233 S. W. 901].)

[8]    Defendant not having the exclusive and unlimited right to the surface of the soil, it was its duty in using the dangerous force of electricity to exercise great care to prevent injury to persons making lawful use of the property. Plaintiff herein had the right to be where he was. As a general rule all wires conveying a dangerous current of electricity, attached to any part of a building to which persons may rightfully go, should be insulated or in some manner protected so as to remove, so far as it is possible, all chance of damage to such persons.    [9]    From the very nature of its business an electric company using highly

charged wires owes a legal duty toward every person who, in the exercise of a lawful occupation in a place where he has a legal right to be and is liable to come in contact with the wires, to see that such wires are properly placed with reference to the safety of such persons. It is only in accord with reason and common sense that persons controlling so dangerous and subtle an agency as electricity should use a high degree of care. Either the wires must be insulated or at least placed beyond the danger line of contact with human beings. While the law does not require the wires to be insulated everywhere, where there is reason to apprehend that persons may come in contact with them in the pursuit of their calling or where they may be reasonably expected to go, they should in some manner be protected. Here no notice or protection of any kind or character was ever given or made.

[10] It has been held in this state that an electric company is required to use very great care to prevent injury to person or property and it is sufficient proof of negligence for it not to raise its wires so high above a roof on which they are placed that those having occasion to go there will not come in contact with them. (*Giraudi* v. *Electric Imp. Co.*, 107 Cal. 120 [48 Am. St. Rep. 114, 28 L. R. A. 596, 40 Pac. 108].)

We do not deem further discussion upon this subject necessary. Defendant knew through its officers that the wires as placed presented a very dangerous condition and it was undertaking to remedy the evil when the accident happened. It made no claim of any unreasonable use on the part of the owner of the premises, or that it would subject the company to expense that it was under no duty to incur. No such question is here involved.

The further point is urged that contributory negligence existed as a matter of law, and that the court should have granted defendant's motion for a nonsuit.

An employee of defendant company interviewed plaintiff concerning the accident. He testified that he had admitted to him that he had seen the lines, but that in working he had forgotten about them and had "raised up and come in contact with the wires." It is chiefly upon this testimony that the claim is based that plaintiff was guilty of contributory negligence. [11] It is true that the law imposes upon

a person *sui juris* the obligation to use ordinary care for his own protection, the degree of which is commensurate with the danger to be avoided.

[12] The question of the company's negligence and also that of the plaintiff were questions for the jury to determine from all the facts and circumstances of the case. While it has been held in this state that one who is aware of a known danger which should have put him on his guard, he cannot rebut the presumption of contributory negligence by showing that he momentarily forgot. it, it has also been held that this rule must have a reasonable construction. [13] To forget is not negligence, unless it shows the want of ordinary care, and that is a question for the jury. (*Giraudi* v. *Electric Imp. Co., supra;* 19 Cal. Jur., p. 586.) There is evidence to show, as above indicated, that plaintiff thought the wires, by reason of their small diameter and the fact that they were not insulated, were telephone wires, and there was no other evidence to show that the existing danger was comprehended by plaintiff. There is, therefore, no merit in this claim. [14] It is also contended that the damages are excessive and not justified by the evidence. The testimony upon this subject shows that plaintiff suffered second degree burns of the back and both heels, which produced severe pains and nervousness which lasted for several days, and incapacitated him from work for several weeks. It further shows that while the burns were at first classified as second degree, it subsequently transpired that one developed the characteristics of a third degree burn, as there was an actual charring of tissues which formed a crater.

[15] The question of excessive damages is one that is first addressed to the trial court. Practically that court must bear the whole responsibility in every case.

The power of appellate courts over excessive damages exists only when the facts are such as to suggest, at first blush, passion, prejudice, or corruption on the part of the jury. (*Morris* v. *Standard Oil Co.,* 188 Cal. 468 [205 Pac. 1073].) No such facts here appear. And finally, complaint is made of the refusal of the trial court to give certain instructions to the jury requested by the defendant, and in giving certain instructions requested by plaintiff. This objection is controlled by the views we have herein expressed.

From what we have said it follows that the judgment should be and it is hereby affirmed.

Knight, J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 27, 1926.