[Civ. No. 12145. First Dist., Div. Two. Nov. 13, 1942.]

## OPAL O. KEARNS, Respondent, v. AMELIA L. SMITH, Appellant.

George M. Naus and Donald Seibert for Appellant.

Herbert Chamberlin and Louis L. Bernheim for Respondent.

DOOLING, J. pro tem.—Plaintiff and respondent in February, 1940, rented a furnished apartment from defendant and appellant. The kitchen of the apartment was constructed with a fixed single socket, for an electric light, in the ceiling. At one time this socket had been fitted with a pull chain for switching the current on and off. During some previous tenancy this chain had become broken near the ceiling and instead of installing a new chain the tenant had screwed into the ceiling socket a removable double socket also fitted with a chain. This removable fixture extended downward from the fixed socket in the ceiling a distance of several inches. It had one socket at its lower end and another socket protruding diagonally from its side. At all times during the tenancy of plaintiff herein there was an electric globe fitted into the socket at the end and the diagonal socket was empty. The chain controlled the flow of electricity to both sockets.

The pulling of the chain in the movable fixture had a tendency to loosen it where it was screwed into the ceiling so that every month or six weeks it would lose contact with the electric current in the ceiling. The light would then fail to burn and it would be necessary to screw the fixture back into the ceiling socket to restore the flow of the electric current.

On November 15, 1940, plaintiff returned to her apartment at about 6 p. m. She entered the kitchen and pulled the light cord. The light flickered and went out. Plaintiff then placed a stool under the light, stood on it and reached up to attempt to adjust the light. She apparently inserted a finger into the empty socket and received a mild shock which startled her so that she fell from the stool and suffered the injuries for which she recovered judgment. Defendant appeals on the sole ground of insufficiency of the evidence.

While the complaint is in three counts, basically respondent relies for recovery on two rules of law applicable to the landlord-tenant relation: 1. That a landlord is liable for injuries to a tenant caused by a latent or hidden defect known to the landlord at the time of letting and concealed from the tenant. (*Stanley* v. *Lander,* 3 Cal.App.2d 284 [39 P.2d 225]) ; 2. That a landlord making repairs is liable for injuries to the tenant proximately caused by his negligence in making the repairs. (*Janofsky* v. *Garland,* 42 Cal.App.2d 655 [109 P.2d 750].)

As to plaintiff's case under the first rule of law the

evidence shows that defendant knew the character of fixture in the kitchen ceiling at the time of the letting and did not speak of it to plaintiff, and plaintiff testified that she never looked at the electric light fixture in the kitchen prior to her injury. The evidence is completely lacking in one element necessary to a recovery by a tenant for injuries from a concealed defect. The defect here, if defect it may be called, was not latent or hidden but patent and open. The double movable socket extended downward from the ceiling in plain view. It was open to ready observation. Any one looking at it would immediately see that it had two sockets, one at the end and one extending diagonally from the side and that the diagonal socket was empty. It may be questioned whether an open and plainly observable electric socket near the ceiling of a room could be considered in law to constitute a defect at all. It is a commonplace that many electrical outlets are customarily left empty. But if defect at all it was not a latent defect but a patent one.

 It is settled law that a landlord is not liable to his tenant for injuries from open and obvious defects in the premises let.

"In the absence of special warranty or agreement, the tenant in taking the leased premises assumes all risks arising from damages which are obvious to ordinary observation." (15 Cal.Jur. 705; *Bernhardy* v. *Marian Realty Co., Ltd.,* 129 Cal.App. 579 [19 P.2d 7]; *Nelson* v. *Myers,* 94 Cal.App. 66, 75 [270 P. 719].) "If the defects or dangers are such as would be apparent to the lessee on a reasonably careful inspection there is no obligation upon the lessor to notify him of their existence." (3 Cooley on Torts, 4th ed., 216; 36 C.J. 205; 32 Am.Jur. 516.)

It is only where the defect is latent or hidden so that it would not be discovered by a reasonably careful inspection that a duty is cast upon the landlord who knows of the existence of such defect to disclose it to his prospective tenant. The rule is so stated in *Stanley* v. *Lander, supra,* most strongly relied upon by respondent. In *Hassell* v. *Denning,* 84 Cal.App. 479 [258 P. 426], the rule with regard to patent and latent defects in the premises demised is thus stated at pp. 481-2, quoting from Underhill on Landlord and Tenant (vol. 2, p. 788):

"As to all patent defects which may be discovered by an examination of the premises the rule of *caveat emptor* applies.

The tenant will be charged with constructive notice or knowledge of patent defects which exist in that portion of the premises leased to and actually occupied or used by him. As to concealed defects attended with personal danger to the tenant and which no examination upon his part would reveal, the rule is otherwise. The landlord is bound to disclose concealed defects if their existence is known to him at the date of the letting provided they are such as the incoming tenant would not discover by a reasonable inspection in order that the latter may guard against them."

Uniformly in the statement of the rule having to do with the landlord's liability for his failure to disclose known defects in the premises will be found the qualification that such defects must be latent, hidden or concealed. (32 Am.Jur. 538-541; 36 C.J. 206; 4 Shearman and Redfield on Negligence, Rev. ed., 1802; 1 Tiffany on Landlord and Tenant 562; 15 Cal.Jur. 705.)

▮ The attempt to support the recovery on the ground of repairs negligently made by the landlord is grounded on an admission in the pleadings and certain evidence hereafter recited. The complaint alleged and the answer admitted that:

"In or about the month of October, 1940, the overhead kitchen electric light fixture . . . was out of order and the electric light bulb therein would not give light when the electric current was turned on. Said defendants did thereupon undertake to and did fix and adjust said fixture so that the electric light bulb again functioned, and so that said fixture appeared to be in a safe and usable condition."

The evidence showed that at the time in question respondent informed the janitor that the light was out and asked him to fix it, that during her absence he screwed the moveable socket tightly into the fixed socket and when she returned that evening he told her that the light was fixed. It is to be noted of the allegation quoted above that it was not alleged or admitted that defendant undertook to or did *repair* the fixture, but only that she undertook to and did *fix* and *adjust* it, and further that the only purpose of the adjustment requested and made was "so that the electric light bulb again functioned." It is to be observed from the evidence, all of which was introduced on plaintiff's case, that the janitor was asked to fix the light which was out, and did so by making the mere mechanical adjustment of screwing the fixture back tightly into the socket.

To this state of facts respondent seeks to apply the rule of *Janofsky* v. *Garland, supra.* That case follows the settled rule that where a landlord makes repairs on the demised premises he is liable for damages caused by his negligence in doing the work. In the Janofsky case and in all other similar cases called to our attention the making of structural repairs was involved. In none of them was such a simple mechanical adjustment as the tightening of the fixture by screwing it into the socket made the basis of a tort liability.

If it be conceded, however, that the simple act of giving the fixture a turn or two into the socket can be considered the making of repairs on the premises so as to call into play the rule contended for, it still remains to inquire whether the landlord was negligent under the rule. The basis of the rule is discussed in two opinions of the Court of Appeals of New York, both of which are cited in the Janofsky case. In *Marks* v. *Nambil Realty Co.*, 245 N.Y. 256 [157 N.E. 129], the court said: "The inference is permissible that the presence of the prop cloaked the defect, dulled the call to vigilance, and so aggravated the danger." In the later case of *Kirshenbaum* v. *General Outdoor Adv. Co.*, 258 N.Y. 489 [180 N.E. 245, 84 A.L.R. 645], the same court enlarged upon the rule in the following language, at page 247:

"A landlord who fails of full performance of a gratuitous undertaking to repair is certainly not liable on contract, for his promise to perform is not supported by consideration paid, and at least until acted upon by the tenant may at any time be withdrawn. Nor, without more, would there be a liability in tort. There must be present an element of misrepresentation by the landlord and a reliance thereupon by the tenant. If a prospective bailee of merchandise has carelessly asserted that the goods have arrived and have been stored in a particular warehouse, so that the bailor, relying upon the statement, has insured them therein, when, in point of fact, the goods upon arrival were elsewhere stored, with the result that when the goods are destroyed by fire all insurance is lost, the prospective bailee is liable for the damage resulting. (*International Products Co.* v. *Erie R. Co.*, 244 N.Y. 331 [155 N.E. 662, 56 A.L.R. 1377].) Similarly, a landlord, gratuitously making repairs for a tenant, and not fully performing his undertaking, is liable for a loss resulting from non-repair, if he has, by abandoning the work as finished, given a false assurance that the premises are in complete

repair, and the tenant has placed full reliance thereupon. 'The gist of the defendant's wrong is the misleading quality of his conduct and words.' Bohlen, Studies in the Law of Torts, p. 212. 'It is the duty of one choosing to perform a gratuitous undertaking to take care lest he should mislead his promisee into the belief that the work has been well done and the premises made safe for use'. Id. p. 224. There is liability if the making of the repairs gives the premises 'a deceptive appearance of safety and so leads the tenant or others in his right to use the land in a way which but for the repairs they would recognize to be dangerous.' Restatement, Law of Torts, sec. 232. It is sufficient to create liability if the making of the repairs has 'cloaked the defect, dulled the call to vigilance, and so aggravated the danger.' Per Cardozo, C. J., in *Marks* v. *Nambil Realty Co.*, 245 N.Y. 256, 259 [157 N.E. 129, 130]. The question, then, is whether or not we have a case of misrepresentation by conduct and reliance thereupon.''

Testing the facts by the rule as so elaborated they fall short of showing any ''deceptive appearance of safety'' created by the adjustment of the fixture. Both before and after the adjustment the fixture not only appeared safe as admitted by the pleadings, but it was safe unless a finger or some object was inserted into the open socket. The open socket was there for all to see both before and after the adjustment. The adjustment gave no appearance of safety to one inserting a finger in the socket. It therefore cannot be said to have been negligently made.

It is true that the case of *Kirshenbaum* v. *General Outdoor Adv. Co., supra,* was cited unsuccessfully by respondent in the *Janofsky* case. But it was there contended that it held that to render the landlord liable for negligent repairs he must have made a defective condition more dangerous. The court in the Janofsky case correctly held that the case announced no such rule. Indeed the condition after the repairs might be less dangerous and the landlord still be liable if a false appearance of safety had thereby been created.

Respondent can find no comfort from the testimony of the electrician that the fixture was insulated with bakelite, a substance which he testified may crack under the heat generated by an electric current. There was no testimony that the insulation on this particular fixture was cracked, the only testimony on the subject being that of the electrician:

"I have no recollection what its condition was and I do not remember whether it was chipped or broken or whether it was intact."

We conclude that the judgment is not supported by the evidence and it is accordingly reversed.

Nourse, P. J., and Spence, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 12, 1943. Curtis, J., and Carter, J., voted for a hearing.