[Civ. No. 7339. Third Dist. July 16, 1947.]

JOHN R. COUCH et al., Respondents, v. PACIFIC GAS AND ELECTRIC COMPANY, Appellant.

Thomas J. Straub, F. H. Pearson, W. R. Dunn, Robert H. Gerdes and Laurence J. Kennedy for Appellant.

Carlton & Shadwell for Respondents.

THE COURT.—Plaintiffs brought this action to recover damages for the death of their child, age 10 months, alleging that by reason of the negligence of defendant in its maintenance of uninsulated wires charged with electricity in the dwelling house belonging to defendant but rented to and occupied by plaintiffs, the said child was electrocuted by coming into contact with such wires. The action was tried before a jury and resulted in a verdict for plaintiffs in the sum of $27,500. On motion for a new trial the court reduced the damages to $188.31 allowed for funeral expenses, and $15,000 general damages. From the judgment entered accordingly defendant has prosecuted this appeal, contending that as landlord it was not liable, that plaintiffs were guilty of negligence contributing to the death of the child, that the verdict was so excessive as to indicate passion and prejudice, and that defendant's motion for a new trial should have been granted. No objection to any instructions given or refused is urged, or other errors asserted.

The evidence shows that defendant owned and operated Pit One power house in Shasta County, and also owned certain cottages at the plant which it rented to its employees, to whom it also sold electric current. In July, 1944, Mr. Couch, who had previously been employed as an electric welder, called upon H. W. Bertholas, defendant's district superintendent in charge of the plant, seeking a position, and was employed as an apprentice operator and mechanic. Arrangements were made with Bertholas for the Couch family to rent a designated cottage, and they arrived at the plant on the morning of July 16th. On the door of the designated cottage they found a note from Bertholas advising them to occupy temporarily another cottage which was indicated. Bertholas had already turned on the power in this cottage by throwing a switch on the back porch. In so doing he had energized three wires, the ends of which protruded from the floor in a small recess in the kitchen of the house, which wires had formerly been connected with a water heater which had been removed by the previous tenant. Mr. Bertholas, immediately after plaintiffs' arrival, went over the premises with Mr. Couch, showed him the electric switch, and told him how to hook up his electric stove. Couch went under the house and connected his stove, and at that time observed some loose wires which Bertholas told him were discarded hot water heater wires which were of no use as Couch did not have a water heater. Couch cut those loose wires, which were several feet from the location of the heater wires, and thought that he had cut those formerly attached to the heater. At no time did he know that the wires protruding from the floor in the kitchen were energized, and he was not told by anyone that they were. On September 3d, the child victim fell or stumbled onto the charged wires and was instantly electrocuted.

Appellant contends that as plaintiffs' landlord it was not liable for the death of the child because of defects in the rented premises; that as such landlord it was not its duty to inspect the premises with the object of locating latent defects which were unknown to it, or to repair patent defects; that the wires were obvious and their existence known to plaintiffs, and that it was their duty to ascertain whether they were charged, and in the meantime to assume that they were. Respondents reply by urging that defendant had knowledge that the wires carried electricity, that this was a latent defect, that defendant failed to warn plaintiffs, and was therefore liable as a landlord. Also that as a vendor of electricity, for

which plaintiffs paid an extra charge, it was liable in such capacity as well, since it was its duty, as dispenser of such power, to insulate all wires which were exposed to the public; that it had failed to insulate the ends of the wires which protruded from the floor in the cottage and that it had energized them when Mr. Bertholas turned on the power in the house before plaintiffs entered it.

█ Appellant asserts that there was no hidden defect for the reason that the wires were obviously present and obviously bare; that the only unknown factor was whether they were charged, a factor as to which it had no knowledge. It relies upon *Shotwell* v. *Bloom,* 60 Cal.App.2d 303, 309 [140 P.2d 728], as stating the applicable law. In that case defendants were the owners of a house which was rented to plaintiffs. The latter, in order to warm the premises, lighted a fire in a fireplace, and subsequently the house burned, consuming plaintiffs' furniture. It was contended by plaintiffs that the destruction of the premises was proximately caused by a crack and loose bricks in the back of the fireplace, that these defects were latent, that their existence was known to defendants and unknown to plaintiffs, and that defendants had failed to warn them. Defendants contended that the evidence did not show that they had actual knowledge of the defects, if any, and that they were patent and not latent. The court stated that the general rule is that the landlord is not liable for injuries to the person or property of the tenant caused by defects in the leased premises; that, in general, the lessee takes the premises as they are, and that there is no duty on the part of the landlord to inspect with the object of locating latent defects nor to repair patent ones. However, the court also went on to say that there is a well-settled exception to this rule; that if there is a hidden defect in the premises, or danger thereon, which is known to the lessor at the time of making the lease, but which is not apparent to the lessee, the lessor is bound to inform the lessee thereof, and failing to do so, he is liable for injuries to the tenant arising therefrom.

Appellant in the case before us asserts that under the general rule thus enunciated, it was not liable. Respondents contend that the evidence brings the case within the exception above stated, and is sufficient to show that the defect was latent and defendant had knowledge thereof.

Apparently, since plaintiffs and defendant rely upon the same authority, the difference between them, aside from the

questions of contributory negligence and excessive verdict, resolves itself into this—was the defect latent, and was it known to defendant?

The trial court gave the following instructions to which no exception is taken:

"You are instructed that if you find the proximate cause of the death of Sandra Couch was a hidden defect on the rented premises, known to the defendant, and unknown to and not subject to discovery by the plaintiffs by the exercise of reasonable care and caution, and if you find that the plaintiffs were not guilty of any negligence proximately contributing to such death, I instruct you to return a verdict for the plaintiffs."

"You are instructed that the defendant, as a landlord, owed the following duty to the plaintiffs and the members of their family: if there were a hidden defect on the premises which was known to the defendant at the time of the letting of the premises to the plaintiffs, but which was not apparent to and would not be discovered by the plaintiffs in the exercise of reasonable care and caution, the defendant was bound to inform the plaintiffs of the hidden defect." (Given on the authority of *Shotwell* v. *Bloom*.)

"You are instructed the defendant in renting the premises was under the duty to advise or warn the plaintiffs of hidden defects in the premises, known to the defendant, and which were not apparent to and would not be discovered by the plaintiffs in the exercise of reasonable care and caution. In this case, therefore, if you find that at the time of the letting a hidden defect existed in the water heater wires, and that such condition was known to the defendant, and that the same was not apparent to and would not be discovered by the plaintiffs in the exercise of reasonable care and caution, I instruct you that the defendant under such circumstances would have the duty to inform the plaintiffs of the hidden defect and if it failed to do so it was guilty of negligence."

Presumably the jury followed these instructions. It may therefore be assumed that it found that the defect was latent, that defendant knew of its existence and failed to warn plaintiffs, and that plaintiffs were not negligent. There is no contention by defendant before this court that the evidence is insufficient to sustain the verdict, and we cannot say as matter of law that the defect was not latent or that defendant was without knowledge of its existence.

In *Tackett* v. *Henderson Brothers Co.*, 12 Cal.App. 658, 662, 668 [108 P. 151], where a child was killed by contact with a loose wire which was charged with electricity, this court said that "the danger was hidden and concealed"; and it quoted from *Mitchell* v. *Raleigh Elec. Co.*, 129 N.C. 166 [39 S.E. 801, 85 Am.St.Rep. 735, 55 L.R.A. 398] to the effect that electricity is "the most dangerous and deadly power recognized as a necessary agency in developing our civilization. . . . Its association is with the most inoffensive and harmless piece of mechanism, if wire can be classified as such, in common use. In adhering to the wire it gives no warning or knowledge of its deadly presence; vision cannot detect it; it is without color, motion or body; latently and without sound it exists, and being odorless, the only means of its discovery lie in the sense of feeling, communicated through the touch, which, as soon as done, becomes its victim." Also see *Stevens* v. *United Gas & Elec. Co.*, 73 N.H. 159 [60 A. 848, 851, 70 L.R.A. 119]. While in the following cases the courts did not say in so many words that the presence of energy in a wire is a hidden danger, that it so considered it is implicit in the decisions themselves. See *Reeve* v. *Colusa Gas & Elec. Co.*, 152 Cal. 99 [92 P. 89]; *Monroe* v. *San Joaquin Light & Power Co.*, 42 Cal.App.2d 641 [109 P.2d 720]; *Foley* v. *Northern Cal. Power Co.*, 14 Cal.App. 401 [112 P. 467]; *Roberts* v. *Pacific Gas & Electric Co.*, 102 Cal.App. 422 [283 P. 353].

Appellant says in its brief "There was no 'hidden defect' for the wires were obviously present and obviously bare. The only unknown factor was whether they were charged, a factor as to which appellant had no knowledge and therefore is not liable." This is in effect an admission that the presence of electricity in the wires was a hidden defect. In this connection appellant cites and relies upon *Kearns* v. *Smith*, 55 Cal.App.2d 532 [131 P.2d 36], as presenting a comparable situation. There the evidence showed that plaintiff rented an apartment from defendant, in the kitchen of which there was, in the ceiling, a single socket for an electric light. At one time this socket had been fitted with a pull chain, but during a previous tenancy the chain had been broken, and the tenant had screwed into the ceiling a removable double socket also fitted with a chain; but only one socket was fitted with an electric globe, the other being empty. At times the double socket would become loose and the current would be shut off, whereupon it became necessary to screw the double socket more tightly into the ceiling. To make this repair plaintiff

mounted a stool and was engaged in screwing the double socket into the ceiling when she inadvertently inserted her finger into the empty socket protruding from its side and suffered a slight electric shock which caused her to fall from the stool. She sustained injuries from the fall, and sued the landlord for the resulting damages, contending that the defect was latent and known to the landlord. The court held, however, that the defect was not latent, but patent and open; that a landlord is not liable for injuries to a tenant from open and obvious defects in the premises—if the open socket could be considered a defect at all.

We do not consider that case as comparable, however. It must be conceded in the case before us that the existence of the wires protruding from the floor was obvious to both landlord and tenant alike. But the death of the child was caused, not by the wires, but by the current with which they were charged; and that they were energized was not apparent. In the Kearns case, that both sockets of the double socket carried the current was known and obvious from the double socket itself, and from the fact that the globe in the one part of it was in use.

As to whether defendant in the instant case had knowledge that the wires were charged, the verdict of the jury implies a finding that it did. There is evidence that Bertholas knew, when plaintiffs moved into the house, that the previous tenant had owned a water heater which he had removed, and which had stood in the recess in the kitchen where the wires protruded; and that Couch had no water heater. The evidence also shows that when Bertholas closed the switch on the back porch of the house, which he did before plaintiffs became tenants of the premises, he energized all of the wires, including those which had been connected with the water heater; that there was a distribution panel on the back porch by the use of which the current to the water heater wires could have been shut off separately, but that Bertholas did not make use of it; and when he closed the main switch he energized the whole house. He admitted that when he went through the building after the arrival of the Couch family he saw the protruding wires and considered them a hazard, but did nothing about them. He also testified that it was company practice for the workman who energized the circuits in the company's houses to "inspect and clear them up," but that when he turned on the power in the house assigned to Couch he did not

do this. He also testified that he called Couch's attention to the wires and told him "That *we* would have to take care of them." (Italics ours.) In this state of the record we cannot say that defendant was without knowledge that the wires in question were energized. Certainly defendant was in possession of sufficient knowledge to put it upon inquiry, and as was said in *Tackett* v. *Henderson Brothers Co., supra,* at page 662, "in view of the character of the agency with which they were dealing and the solicitude of the law for human life, the failure to exercise diligent and proper care to obtain information is equivalent to actual knowledge of the situation, as far as their civil liability is concerned."

Also see *Stanley* v. *Lander,* 3 Cal.App.2d 284, 289 [39 P.2d 225], quoting from Tiffany on Landlord and Tenant, page 568, where it is said:

"The view that the lessor's liability as for negligence exists when he has reason to suspect the existence of the dangerous conditions as well as when he actually knows of them is asserted or indicated in other cases, and accords with the rule, ordinarily applied, in determining questions of negligence, when this is dependent on knowledge of physical conditions, that one has knowledge of that which he ought to know. It may be doubted, indeed, whether the statements occasionally made that the lessor is not liable unless he has actual knowledge of the dangerous conditions are to be regarded as excluding his liability when he has reason to suspect their existence, though without actual knowledge thereof. Were the lessor to be regarded as liable only on proof of his actual knowledge of the defects or dangers, he might, by purposely refraining from inquiry into the presence of dangerous conditions, though having reason to believe that such exist, entirely escape liability."

 It might be added that, while under the landlord and tenant rule the evidence is sufficient to sustain the verdict, defendant was, in this case, not only the landlord but the vendor of electricity. It owned the house which it assigned to plaintiffs, and it also owned and controlled the electric system therein; it failed to insulate the heater wires, and it energized them and thus created the hazard which caused the accident, before plaintiffs became the occupants. In its dual capacity it was charged with a greater responsibility than it would have had as the mere landlord. While still in the sole possession of the property it could have averted the catastrophe by insulating the ends of the protruding wires,

by excluding the current from them by use of the switch in its distribution box, or by cutting the wires. ▮ As we pointed out in *Lozano* v. *Pacific Gas & Electric Co.*, 70 Cal. App.2d 415 [161 P.2d 74], the duty of a power company regarding electric wires and equipment requires reasonably prompt and frequent inspection, and failure to comply with this rule charges it with notice of a defective or dangerous condition. In *Polk* v. *City of Los Angeles*, 26 Cal.2d 519 [159 P.2d 931], it was said, at page 525, that wires carrying electricity must be carefully and properly insulated by those maintaining them, at all places where there is a reasonable probability of injury to persons or property therefrom. And in *City of Marlow* v. *Parker*, 177 Okla. 537 [60 P.2d 1044, 1046], the court said that care includes circumspection and foresight with regard to reasonably probable contingencies. Also see *McCormick* v. *Great Western Power Co.*, 214 Cal. 658, 662-663 [8 P.2d 145, 81 A.L.R. 678] ; *Anderson* v. *Southern California Edison Co.*, 77 Cal.App. 328, 336-337 [246 P. 559].

That a high degree of care is required by one who is operating a dangerous instrumentality such as transmission wires for electricity was held in *Anstead* v. *Pacific Gas & Electric Co.*, 203 Cal. 634, 638 [265 P. 487], and cases there cited. In other cases it has been said that such person must exercise "very great care." (*Anderson* v. *Southern California Edison Co.*, *supra*; *Giraudi* v. *Electric Imp. Co.*, 107 Cal. 120, 124 [40 P. 108, 48 Am.St.Rep. 114, 28 L.R.A. 596].) In *Fairbairn* v. *American River Electric Co.*, 170 Cal. 115, 118 [148 P. 788], the court said that where death may be caused by an agency lawfully in use, ordinary care requires that every means known, or that with reasonable inquiry would be known, must be used to prevent it.

▮ Appellant argues briefly that plaintiffs were guilty of contributory negligence; but we cannot say as matter of law that such was the case. That question was one for the jury to determine under the instructions of the court. It is not contended that the instructions were either erroneous or insufficient, and we must assume that they were followed and that the jury found that plaintiffs were not guilty of contributory negligence. The burden of proving contributory negligence was on the defendant, and the question of the sufficiency of the evidence for that purpose is ordinarily one of fact for the jury.

Plaintiffs were not bound to look for latent defects—in this case that the wires were energized. Couch was not told that they were; they appeared to be out of use. Furthermore, Couch testified that while under the house connecting up his electric stove he saw some loose wires hanging under the floor, which he cut off; that he asked Bertholas what they were and was told that they "were discarded heater wires or hot water heater wires," that they "were discarded and of no use"; that he thought when he cut them off that he had cut the ones which had been connected with the water heater. He was not an electrician and was able to connect his stove only under instructions from Bertholas. He was not shown the distribution panel on the back porch, and did not know what it was, or that the power to the heater wires could be cut off there. While there was some conflict between the testimony given by Couch and that of Bertholas, such conflict was for the jury.

It is said in *Anthony* v. *Hobbie*, 25 Cal.2d 814, 818 [155 P.2d 826]: "The burden of proving contributory negligence is upon the defendant. (19 Cal.Jur. 697-699.) True, contributory negligence may be found by the trier of fact from the plaintiffs' own evidence. But cases in which it can be said that the negligence of plaintiff contributes proximately to the accident as a matter of law are rare. The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion."

Here it cannot be said that the evidence is without conflict on the facts, or that inferences therefrom point unerringly to negligence on the part of plaintiffs.

Also see *Polk* v. *City of Los Angeles, supra*; *Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]; *Campbell* v. *Fong Wan*, 60 Cal.App.2d 553 [141 P.2d 43]; *Anderson* v. *Southern California Edison Co., supra*; *Lozano* v. *Pacific Gas & Electric Co., supra*; *Reuter* v. *Hill*, 136 Cal.App. 67, 74 [28 P.2d 390]; *Reeve* v. *Colusa Gas & Elec. Co., supra*, at page 110; *Howell* v. *San Joaquin L. & P. Corp.*, 87 Cal. App. 44, 56 [261 P. 1107]; *Foley* v. *Northern Cal. Power Co.,*

*supra*; *Roberts* v. *Pacific Gas & Electric Co.*, *supra*, at page 434; *City of Thomaston* v. *Atkinson*, 25 Ga.App. 615 [103 S.E. 876]; *Southern Bell Telephone & Telegraph Co.* v. *Davis*, 12 Ga.App. 28 [76 S.E. 786, 790-791]; *Lewis' Administrator* v. *Bowling Green Gaslight Co.*, 135 Ky. 611 [117 S.W. 278, 279, 22 L.R.A.N.S. 1169]. In the Roberts case, *supra*, the court said, regarding the conduct of plaintiff: "As a reasonable man he may have assumed that wires which were pulled down to the ground and lay beneath the fallen tree were either broken or carried no load of electricity. Under the circumstances of this case, the existence of contributory negligence was a question for the jury to determine."

■ Appellant's final contention is that a new trial should have been granted because the verdict was so excessive as to indicate that it was the result of passion and prejudice. We cannot say that the sum allowed by the court is excessive. In the recent case of *Brown* v. *Boehm*, 78 Cal.App.2d 595 [178 P.2d 49] (hearing in Supreme Court denied) we had occasion to consider the question of excessive verdicts, and there held that the remedy for such verdicts is practically committed to the judge who presides in the court below, who is authorized to weigh the evidence and who, it is presumed, will not allow a verdict for the full amount to stand if he believes it gives more than the pecuniary loss that plaintiffs may be reasonably supposed to suffer. Here the trial court performed that duty and reduced the amount of the verdict. Under the decisions cited in the Brown case, we cannot say that the amount fixed by the court is excessive. As there pointed out, the value of the dollar has materially decreased in recent years, and that fact has been recognized by appellate courts in refusing to reduce verdicts which formerly might have been considered excessive.

The judgment is affirmed.

A petition for a rehearing was denied August 13, 1947, and appellant's petition for a hearing by the Supreme Court was denied September 8, 1947. Traynor, J., voted for a hearing.